182 N.J. Super. 307 (1982)
440 A.2d 1160
MARTHA GANT BOWDEN, PLAINTIFF-APPELLANT,
v.
ROBERT H. BOWDEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 1981.
Decided January 11, 1982.
*308 Before Judges BISCHOFF, KING and POLOW.
Dolores A. Mastro, attorney for appellant.
Aron, Till & Salsberg, attorneys for respondent (Peter W. Till and Mark S. Tabenkin on the brief).
The opinion of the court was delivered by POLOW, J.A.D.
On leave granted to appeal from an interlocutory order plaintiff wife attacks a pendente lite determination restraining her from proceeding with a Nebraska custody action and awarding joint custody of two children in conflict with a previous Nebraska decree. She also seeks a remand for reconsideration of the interim support order, characterized by her as "unreasonably *309 low." There are several basic conflicting factual allegations which must be resolved to determine whether jurisdictional prerequisites favor New Jersey or Nebraska as an appropriate forum under the Uniform Child Custody Jurisdiction Act (UCCJA), N.J.S.A. 2A:34-28 et seq. Hence, we remand for a plenary hearing and full compliance with the procedural requirements of the act as necessary to resolve the jurisdictional conflict.
The parties were married in the State of Nebraska on July 1, 1972. They then moved to New Jersey where they both lived and worked until their separation in July 1980, when plaintiff left for Nebraska with the two children, five months and three years of age, respectively. Plaintiff took them to the home of her parents. On July 30, 1980 she obtained a temporary custody order from the District Court of Lancaster County, Nebraska. Although defendant was given notice, he made no appearance there nor did he attempt to contest either the jurisdiction or the substantive determination of the Nebraska court. A subsequent decree, entered December 11, 1980, adjudicated "a legal separation of the parties" and awarded custody of both children to plaintiff. It further specified that the children "shall not be removed from the State of Nebraska." Defendant took no action in either that state or this until plaintiff instituted the present action here for separate maintenance on December 31, 1980, demanding support for herself and the children. Simultaneously therewith, plaintiff applied for pendente lite relief, which defendant countered with a cross-motion, dated January 21, 1981, for joint custody and other relief. Based upon certifications of the parties and oral argument, the trial judge refused to recognize the Nebraska custody order. He concluded that under the UCCJA, which had been adopted in both states prior to the separation of these parties, Nebraska lacked the jurisdictional prerequisites to adjudicate the dispute.
The marriage had its turbulent moments. Plaintiff alleges that she finally left in July 1980 only after defendant "advised me that he had been to see an attorney and wanted a divorce." *310 According to her, defendant had been cohabiting with a paramour while she and the children were visiting her family in Nebraska between July 5 and July 22, 1980, just prior to the separation. Upon their return to New Jersey on the latter date defendant announced that he was leaving. By way of responsive certification, defendant concedes that he was aware of his wife's desire to go back to Nebraska with the children. He allegedly consented only "on the condition that they return within three to four weeks." When she departed, plaintiff left the following note:
July 25
Bob 
We've gone to Nebraska  you know where you can reach us. I just need to be with my family until I can get my head together.
We all love you.
Denie
The parties had accumulated little property. Plaintiff took one of two automobiles and half of the cash savings. Defendant subsequently sent her personal effects and the children's belongings to Nebraska. Although he contributed approximately $520 in support during the six months after they left New Jersey, he made no effort to participate in the suit for custody and dissolution of the marriage in Nebraska. He resorted to legal proceedings here only in response to the separate maintenance action and support application filed by plaintiff. For whatever reasons, for almost six months he made no effort either to obtain legal custody or to visit with his children except for a request that he be allowed to take the three year old child to New Jersey for visitation. He apparently chose not to visit with them in Nebraska when plaintiff allegedly refused to allow the child to leave that state.
In his oral opinion on the cross-motions for pendente lite relief, the trial judge criticized the Nebraska court for accepting jurisdiction. He treated the removal of the children from this State as child-snatching, without dealing with or resolving the conflicting factual allegations concerning the circumstances which led to the separation of the parties. Although he reviewed *311 some of the factors which must be considered before a court accepts jurisdiction under the UCCJA, he did not consider critical factual issues which must be resolved to determine whether New Jersey courts should accept or decline jurisdiction, and he failed to follow certain procedural prerequisites mandated by the statute.
Defendant now characterizes plaintiff's departure with the children as a unilateral, surreptitious removal. He alleges he consented to their going to Nebraska only with the understanding that they return in "three to four weeks ... to review the state of [the] marriage." Plaintiff emphatically denies this characterization, stating:
Do not believe for one moment that my husband would have gone to any trouble to obtain even visitation with the boys if it had not been for the fact that I filed an action against him. The children and I could rot in Nebraska  provided we did not ask him for support.
This case does not present a garden-variety "child-snatching" situation. The cases cited by defendant involve violation of a prior court order or highly improper conduct by the "snatching" party. Stevens v. Stevens, 177 N.J. Super. 167 (App.Div. 1981) (mother assaulted babysitter in Arizona and removed child to New Jersey); Van Haren v. Van Haren, 171 N.J. Super. 12 (App.Div. 1979) (father violated prior New Jersey custody award).
We conclude that the apparent conflict between the parties concerning the circumstances of the separation requires a plenary hearing and specific factual findings to determine whether the "interest of the child[ren]" dictates the conclusion that Nebraska is a more appropriate forum. This must be determined even if jurisdiction exists in New Jersey "to make an initial or modification decree." N.J.S.A. 2A:34-35 a. and c. In this respect there is a genuine issue of material fact, clearly demonstrated, which mandates a plenary hearing. Lepis v. Lepis, 83 N.J. 139, 159 (1980). If, as plaintiff charges, defendant intended to leave the family for his own self-indulgent reasons and expressly or impliedly consented to the removal of his children to Nebraska, plaintiff's conduct cannot be characterized *312 as wrongful. Whether defendant's belatedly expressed interest in joint custody is indeed genuine rather than pretended as part of an effort to minimize his support obligation while enjoying his freedom, can only be resolved by plenary hearing. For that purpose the court may order plaintiff, a party not residing in this State, "to appear personally ... and ... that failure to appear may result in a decision adverse to that party." N.J.S.A. 2A:34-39 b. Furthermore, testimony may be requested by the court and taken in another state, then forwarded here. Appropriate social studies may also be requested and made available. N.J.S.A. 2A:34-47 a.
If defendant is found to have consented expressly or impliedly to plaintiff's removal of the children to Nebraska, his failure to intercede in the proceedings there and his failure to commence proceedings here within six months of their arrival in Nebraska,[1] openly and unsurreptitiously, could result in the "state of refuge" becoming the new home state of the children. See, Bodenheimer, "Interstate Custody: Initial and Continuing Jurisdiction," 14 Family Law Q. 203, 209 (1981). Other factors to be considered in making that determination include the "clean hands" doctrine as it applies to each party and whether exercise of jurisdiction would further or contravene a major purpose of the act, i.e., "deterrence of unilateral removals of children ... to obtain custody awards." Ibid. If it is determined as a matter of fact that defendant consented to the children's return to Nebraska where they had just previously been on a visit, and that he knew where they were but, motivated by his own convenience, neither sought their return nor contested the Nebraska custody action, their removal from this State would not have been a "unilateral" removal to obtain a custody award which the act was designed to deter. At the time of the hearing *313 on the cross-motions here by the trial judge, six months had elapsed since the children's arrival in Nebraska. That state may well have become their "home state" under the provisions of the UCCJA if the basic factual conflict concerning defendant's knowledge and consent is resolved in favor of plaintiff. N.J.S.A. 2A:34-30 e.
Most of the facts surrounding plaintiff's departure were vigorously disputed in the certifications filed. As noted earlier, resolution of conflicting factual allegations is necessary to resolve the "clean hands" aspect of the UCCJA. N.J.S.A. 2A:34-36. Specific findings of fact after a plenary hearing are necessary to determine whether plaintiff had good cause to leave with her infant children and to determine whether defendant precipitated the separation by proclaiming his intention to leave and his demand for a divorce. His claim that plaintiff was to return before the end of August 1980 and his reason for failing to appear in the Nebraska action or to contest its jurisdiction also present genuine factual issues bearing upon the basic jurisdictional conflict.
Even if New Jersey is found to have the necessary jurisdictional prerequisites to entertain a custody action, it may be appropriate, depending upon the circumstances, to decline jurisdiction. N.J.S.A. 2A:34-42; see, Vannucchi v. Vannucchi, 113 N.J. Super. 40, 47 (App.Div. 1971), certif. den. 58 N.J. 163 (1971). The court in the case at bar was called upon to determine factually whether the best interests of a five-month-old baby and his three-year-old brother would have been better served under the conditions that are found to have existed, by remaining here. We must avoid the risk of overreaction to perceived transgressions by the courts of other jurisdictions in highly charged and emotional custody controversies and carefully consider and apply the letter and the spirit of the UCCJA to promote its salutary goals. There is no interjurisdictional contest to be won or lost. Although overlapping jurisdiction is still possible under the act, avoidance of competition and conflict is precisely the reason for its enactment. Hence, our trial courts, *314 as well as those of sister states, must act with cautious restraint where jurisdiction has already been exercised elsewhere.
N.J.S.A. 2A:34-34 precludes exercise of jurisdiction by a court of this State where a court of another state has already properly done so.
2A:34-34. Simultaneous proceedings in other states
a. A court of this State shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.
The key determination for application of this section is contained in the phrase "substantially in conformity with this act." Ibid. The trial judge concluded that the Nebraska custody decree is not "in substantial conformity" with the UCCJA. Under the circumstances, this premature determination precipitated the resultant conflict, characterized by the trial judge himself as a jurisdictional "shouting match."
Goals of the act's sponsors include minimization of relitigation, encouragement of cooperation among jurisdictions and, ultimately, procedures which promote the best interests of children. Toward the accomplishment of those ends, N.J.S.A. 2A:34-34 c provides that
........
c. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 20 through 23. If a court of this State has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum. [L. 1979, c. 124, § 7, eff. July 3, 1979].
This provision was designed to avoid jurisdictional "shouting matches," and has been used successfully to accomplish that end. See William v. Michele, 99 Misc.2d 346, 416 N.Y.S.2d 477, 483 (Fam.Ct. 1979). The section is mandatory, i.e., the statute directs *315 that, once informed, the court "shall stay the proceeding and communicate with the court in which the other proceeding is pending." This the trial judge did not do. Cooperatively, the courts should attempt to reach agreement as to the more appropriate forum, with the ultimate aim of providing protection and control, in both states, to assure compliance with custody and visitation orders entered in one of them. Following a final judgment or decree containing specific terms for custody and visitation or joint custody as appropriate, the goal of the nonforum jurisdiction should be imposition of reciprocal rather than conflicting provisions.
On remand the trial judge is instructed to "communicate with the court in which the other proceeding is pending" and discuss the matter to achieve the desired end without jurisdictional competition. The aim is to promote "cooperation ... in the interest of the child[ren]." N.J.S.A. 2A:34-29 b, a key purpose of the UCCJA. The support previously ordered should be reconsidered upon resolution of the custody jurisdiction issue.
The order for interim joint custody is vacated and the matter remanded for a plenary hearing to be conducted within 60 days hereof. We do not retain jurisdiction.
NOTES
[1] Although defendant filed his cross-motion precipitated by plaintiff's demand for support in the separate maintenance suit here four days before expiration of six months from the date the children left the State, by the time it was considered by the court on February 10, 1981 the children had resided continuously in Nebraska more than six months.