690 A.2d 1113

MICHELLE GANZ, PLAINTIFF–APPELLANT, v. EDWARD RUST, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 29, 1996—Decided April 4, 1997.

Before Judges STERN, HUMPHREYS and WECKER.

*Victoria Reiners* argued the cause for appellant (*Warren County Legal Services*, attorneys, *Ms. Reiners*, on the brief).

*Paul M. Aaroe*, II argued the cause for respondent (*Aaroe Law Offices*, attorneys, *Mr. Aaroe*, on the brief).

The opinion of the court was delivered by

WECKER, J.S.C. (temporarily assigned).

This case requires us to determine the propriety of a Family Part order declining to exercise jurisdiction under the Uniform Child Custody Jurisdiction Act, *N.J.S.A.* 2A:34–28 *et seq.* (UC-CJA), and consequently dismissing plaintiff's custody complaint. We conclude that the dismissal was premature, and reverse and remand for a plenary hearing to determine whether New Jersey has jurisdiction, if so whether Pennsylvania also has jurisdiction, and if both states have jurisdiction, which is the more appropriate forum in which to resolve the ongoing custody and visitation issues.

## I.

A chronology is crucial to an understanding of the issue presented. Jacob Q. Rust was born to plaintiff Michelle Ganz and defendant Edward Rust on December 2, 1992 in Washington County, Pennsylvania, not far from Pittsburgh. At the time of Jacob's birth, Ganz and Rust were living together, along with Ganz' older child born of a previous relationship. The parties

never married, and sometime in May 1993 they separated. Ganz alleges in her complaint that the separation was a result of Rust's drinking and acts of domestic violence. By June 1, 1993 Rust had moved to his parents' Washington County home, and Ganz had moved with the two children to live with her parents in Freehold, New Jersey. On September 1, 1993 Ganz filed for child support under the Uniform Reciprocal Enforcement of Support Act (URE-SA), *N.J.S.A.* 2A:4–30.24 *et seq.*, in the Family Part of the New Jersey Superior Court in Monmouth County. The record does not disclose the result of the New Jersey support action.

On October 22, 1993, Rust filed for a determination of custody and visitation in the Court of Common Pleas in Washington County. The Complaint filed by Rust alleged that Jacob had lived with Ganz in New Jersey since June 1993, a period of about five months. The parties reached a detailed agreement regarding custody and visitation, and the terms of that agreement were memorialized in a consent order filed in the Pennsylvania action on February 23, 1994. That order, signed by Judge Debbie O'Dell Seneca, provided for joint legal custody, primary physical custody with Ganz, and visitation for Rust according to a detailed schedule under which Jacob would spend 33 days in 1994 and 35 days in 1995 with Rust. While the consent order does not expressly refer to each party's state of residence, we infer from the circumstances that the parties contemplated that Ganz would continue to live in New Jersey. The child lived in New Jersey with his mother and had visits with his father in Pennsylvania, except for a period when Ganz requested Rust to keep the child for several months [1] because, as Ganz alleges and Rust does not dispute, she had Lyme disease.

---

[1] The parties dispute whether it was two months or four months, beginning in November 1994. Rust's Verified Petition to Modify Custody signed April 16, 1995 alleges that he "had physical custody of Jacob from Thanksgiving 1994 until March 19, 1995...." Ganz alleges that Jacob resided with Rust for "approximately eight weeks.... from Thanksgiving 1994 to the end of January 1995.

The parties dispute many facts that impact on the merits of an ultimate custody determination, which is not before us, as well as on jurisdiction. For example, while Rust alleges that he was unable to exercise visitation for extensive periods because Ganz would not give him her address or phone number, Ganz claims she always provided that information. Rust challenges her fitness to parent Jacob, and Ganz cites the prior acts of violence against her. Ganz has been receiving public assistance for at least some portion of the period since moving to New Jersey, and claims that the financial situation that inhibited her ability to litigate in Pennsylvania is a result, at least in part, of inadequate child support.

On May 3, 1995 Rust filed a petition in Pennsylvania to modify the consent order and grant sole custody to him. The record reveals a May 8, 1995 order from the Pennsylvania court requiring Ganz to appear in Washington County on June 26 for a pre-hearing conference, and providing the name, address and telephone number of the Washington County Legal Aid Society and the local lawyer referral service. It is unclear when Ganz received that notice. A subsequent notice to Ganz dated June 27, 1995 to appear at a September 6, 1995 hearing also appears in the record. Ganz received that notice sometime in the summer of 1995.

On August 22, 1995 Ganz filed a Verified Complaint in Warren County, New Jersey, seeking sole custody of Jacob and a restraint against Rust proceeding with the Pennsylvania action. Ganz is represented in the New Jersey action by Warren County Legal Services. On August 25, 1995 her New Jersey attorney wrote to John P. Smider, Esq., the master appointed by the Pennsylvania court, to notify him of the filing of the New Jersey action, as well as Ganz's contention that New Jersey and not Pennsylvania was now the home state of the child. The letter explained that Ganz's appearance in Washington County would be a hardship, that jurisdiction over custody issues was properly in the New Jersey court, and asked that the Pennsylvania proceeding be dismissed. A copy of that letter was sent to Rust's Pennsylvania attorney.

On December 14, 1995, without Ganz's presence or formal appearance in the Pennsylvania action, a custody hearing was conducted by the master, whose written report of the same date is in the record before us. The master found that a notice of hearing was served upon Ganz in New Jersey on July 15, 1995. He noted that the court had received a letter from Ganz's New Jersey attorney describing her difficulty in obtaining representation [2] and in appearing in western Pennsylvania, due to her limited financial circumstances. The master categorized the letter as an *"ex parte* communication,"* despite a copy noted thereon to Kenneth Stemberg, Esq., the Pennsylvania attorney who filed Rust's petition for modification, and the master concluded that the letter did not constitute the required appearance. After hearing testimony from Rust and his mother, the master concluded that custody should be awarded to Rust, with visitation for Ganz only in Washington County.

It was after learning of that report and a proposed court order adopting the master's recommendations that Ganz on December 27, 1995 sought an Order to Show Cause in the New Jersey action why she should not be granted temporary custody, restraints against Rust proceeding in Pennsylvania, a plenary hearing on jurisdiction, a custody investigation, and related relief. The New Jersey Family Part Judge made telephone contact on December 27, 1995 with Judge Seneca of the Pennsylvania Court of Common Pleas, and faxed to her the papers filed by Ganz in New Jersey. The Pennsylvania judge on December 27 told the New Jersey judge she intended to proceed with the Pennsylvania custody determination. While the New Jersey judge was not satisfied with that response, he ordered Ganz to contact the Washington County (Pennsylvania) Legal Aid Society and to file her exceptions to the Pennsylvania master's report by December 28. On December 27 the New Jersey judge also wrote to Judge Seneca

---

[2] Ganz's counsel represented to the New Jersey judge that the Washington County Legal Aid was in a conflict because it had previously represented Rust, and declined to provide independent counsel for Ganz.

requesting her view of the appropriate resolution of the jurisdictional issue. Judge Seneca never responded.

Ganz, who was unable to obtain representation by the Washington County Legal Aid Society, sent a letter to Judge Seneca on her own behalf on or about December 28, explaining her inability to obtain representation and the basis for claiming jurisdiction in New Jersey. A copy appears to have gone to Rust's attorney of record in Pennsylvania. On December 28, Judge Seneca signed an order giving Ganz an extension of 15 days to file her exceptions. However, it appears that neither Ganz nor her New Jersey attorney received that order until February 1, 1996. In the meantime, on January 23, 1996, Judge Katherine B. Emery entered an order in Pennsylvania incorporating the December 14 master's report and awarding custody to Rust. Neither the report nor the order addressed subject-matter jurisdiction. Assuming that Ganz had notice of the Pennsylvania hearing, and assuming that without counsel and with limited means she nevertheless had the obligation to appear at the master's hearing in Pennsylvania on December 14, 1995 [3], even sufficient notice and opportunity to be heard do not confer subject-matter jurisdiction or validate an otherwise void Pennsylvania court order. *See Neger v. Neger,* 93 *N.J.* 15, 35, 459 *A.*2d 628 (1983).

Apparently the January 23 order was mailed to Ganz in New Jersey at a prior address, and not at the Hackettstown address that Ganz provided in her December 28 letter to the Pennsylvania court. Ganz learned of the order when Rust arrived at her home in Hackettstown, New Jersey on January 31, accompanied by a local police officer, seeking physical custody of Jacob and claiming to have a Pennsylvania court order. Ganz was not provided with the order at that time. On February 1, 1996, Ganz's New Jersey attorney obtained a faxed copy of the order directly from the

---

[3] We assume for purposes of this decision, without deciding, that Ganz had sufficient opportunity to be heard in Pennsylvania to meet constitutional due process requirements.

Pennsylvania court, and on that date the Family Part Judge entered an Order to Show Cause with temporary restraints against Rust enforcing the Pennsylvania order changing custody. On March 29, 1996, the return date of the Order to Show Cause, the Family Part Judge denied Ganz the relief sought and dismissed her complaint, concluding that because the Pennsylvania proceeding had been initiated and was pending when Ganz filed her New Jersey complaint on August 22, 1995, New Jersey was barred by the UCCJA from exercising jurisdiction or modifying the Pennsylvania order. The judge granted Ganz a temporary stay pending the filing of her notice of appeal, and we granted a further stay of the dismissal order pending this appeal.

## II.

The only question before us is whether the judge erred in dismissing Ganz's complaint without a hearing. Ganz's claim that New Jersey has jurisdiction is based on the UCCJA provisions conferring jurisdiction where New Jersey "is the home state of the child at the time of commencement of the proceeding," *N.J.S.A.* 2A:34–31a(1), and defining "home state" as

> the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6–month or other period.
>
> [*N.J.S.A.* 2A:34–30e.]

Ganz argues that Pennsylvania did not have jurisdiction at the time Rust brought his modification action, because Jacob had been living in New Jersey for more than six months. If indeed she is correct, then *N.J.S.A.* 2A:34–42a(1) does not bar a New Jersey modification decree.

Rust argues that the New Jersey Family Part judge correctly concluded that New Jersey's exercise of jurisdiction was barred by *N.J.S.A.* 2A:34–34a, which provides:

> A court of this State shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the child was pending

in *a court of another state exercising jurisdiction substantially in conformity with this act,* unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons. (emphasis added).

The actual custody determination, in the best interest of Jacob [4], is not before us. We address only the method by which the trial court must determine jurisdiction under the controlling statutes. Despite the many "tie-breaking" provisions of the Act, we see the potential if not the actuality of an impasse in this case. The Pennsylvania court that has now issued its own modification decree never addressed the jurisdictional issue or the application of the UCCJA to this case.

The UCCJA mandates recognition and enforcement of the Pennsylvania modification decrees if that state

assumed jurisdiction under statutory provisions substantially in accordance with [that Act] or ... made under factual circumstances meeting the jurisdictional standards of [the Act].

*[N.J.S.A.* 2A:34-41.]

Similarly, New Jersey is not to modify such a decree "unless (1) it appears to the court of this state that the [Pennsylvania] court ... does not now have jurisdiction under [the UCCJA] ... and (2) [New Jersey] has jurisdiction." *N.J.S.A.* 2A:34-42.

A court must make a threshold determination that it has subject-matter jurisdiction before entering a modification decree. *See N.J.S.A.* 2A:34-31; 23 *Pa.C.S.A.* § 5344. The Pennsylvania statute is virtually identical to the New Jersey version, and provides in pertinent part:

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

---

[4] It appears that Rust has had little if any visitation with Jacob since sometime in the Spring of 1995. The distance between the parties' homes, the ongoing litigation, as well as financial and personal circumstances have apparently hindered cooperation between the parents. We are mindful that such total separation from either parent is rarely in a child's best interest.

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) *it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:*

(i) the child and his parents, or the child *and at least one contestant, have a significant connection with this Commonwealth; and*

(ii) *there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;* (emphasis added.)

As we understand the record, the only basis for jurisdiction in Pennsylvania in 1995 could have been under section (2), if that court received evidence and made a finding that it was "in the best interest of the child ... [for Pennsylvania to assume jurisdiction] because ... the child and [his father] ... have a significant connection with [Pennsylvania]; and there is available in [Pennsylvania] substantial evidence concerning the present or future care, protection, training and personal relationships of the child." *Id.* No such determination was made by the Pennsylvania court; hence, its assumption of jurisdiction is subject to collateral attack in New Jersey.

[3]  It is implicit in the UCCJA that a state does not automatically lose jurisdiction over custody when it is no longer the home state, if one parent remains resident in that state, the child has significant contact with the state, there is substantial relevant evidence available in the state, and it is in the child's best interest for that state to make the determination. *See N.J.S.A.* 2A:34–31a(2); 23 *Pa.C.S.A.* § 5344(a)(2). Logically, however, the longer a child resides in a new home state, the less likely it is that the elements warranting continued jurisdiction in a prior home state will be found. *See L.F. v. G.W.F.,* 183 *N.J.Super.* 195, 202–05, 443 *A.*2d 751 (App.Div.1982), where we found that New Jersey had lost jurisdiction to enter a modification decree because the child had lived in Pennsylvania with one parent during the five years

since the original New Jersey decree. *See also Neger v. Neger*, *supra*, 93 *N.J.* at 29–31, 459 *A.*2d 628.

■ We are guided in our decision by the underlying purposes of the UCCJA and the Parental Kidnapping Prevention Act, 28 *U.S.C.A.* § 1738A (PKPA)[5], as well as the express provisions of those statutes. *See Ivaldi v. Ivaldi* 147 *N.J.* 190, 685 *A.*2d 1319 (1996), *Neger v. Neger, supra.* The PKPA has been held by the United States Supreme Court to require state courts to give full faith and credit to the custody decrees of sister states, so long as the decree to be enforced has been entered in compliance with the PKPA itself. *Thompson v. Thompson*, 484 *U.S.* 174, 176, 108 *S.Ct.* 513, 514, 98 *L.Ed.*2d 512 (1988). Our Supreme Court has concluded that while the PKPA "creates a clear priority for the home state, ... jurisdiction may be based on significant contacts only if no state qualifies as the home state." *E.E.B. v. D.A.*, 89 *N.J.* 595, 610, 446 *A.*2d 871 (1982), *cert. denied sub. nom. Angle v. Bowen*, 459 *U.S.* 1210, 103 *S.Ct.* 1203, 75 *L.Ed.*2d 445 (1983). The Court further concluded that the PKPA "does not significantly disrupt the jurisdictional provisions of UCCJA." *Id. See also Neger v. Neger, supra*, 93 *N.J.* at 36, 459 *A.*2d 628.

Both New Jersey and Pennsylvania have enacted the UCCJA. See 23 *Pa.C.S.A.* § 5341 *et seq.* The legislative intent is set forth in *N.J.S.A.* 2A:34–29:

The Legislature finds that this act is necessary in order to: a. Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being; b. Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child; c. Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning

---

[5] In the event of a conflict between the state and the federal statutes, the PKPA preempts the UCCJA. *D.B. v. R.B.*, 279 *N.J.Super.* 405, 411, 652 *A.*2d 1254 (App.Div.1995), *citing In re Adoption of Child by T.W.C.*, 270 *N.J.Super.* 225, 636 *A.*2d 1083 (App.Div.1994). However, we find no conflict and therefore no preemption issue here.

his care, protection, training, and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state; d. Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child; e. Deter abductions and other unilateral removals of children undertaken to obtain custody awards; f. Avoid relitigation of custody decisions of other states in this State insofar as feasible; g. Facilitate the enforcement of custody decrees of other states; and h. Promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child.

Our Supreme Court's most recent discussion of the rationale for the Legislature's adoption of the UCCJA appears in *Ivaldi v. Ivaldi, supra,* holding that the Act applies to an international child custody dispute and remanding that case to the trial court to determine whether New Jersey or Morocco provides a more appropriate forum. In so ruling, the Supreme Court described "the central policy of the Act's jurisdictional provisions ... to assure that custody litigation occurs in the place where the child and his or her family have the closest connection." 147 *N.J.* at 198, 685 *A.*2d 1319. The Court continues:

One of the general purposes of the Act is to assure that custody litigation proceeds in the state where the child and the child's family have the closest connections and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available. *N.J.S.A.* 2A:34-29(c).

[*Ibid.*]

We recognize that *Ivaldi* involved concurrent proceedings to make an initial custody determination, whereas we deal with concurrent Pennsylvania and New Jersey proceedings in which each party seeks to modify a prior Pennsylvania consent order. We note, however, that the Court in *Ivaldi* further identified "the identification of the 'home state' and the need to avoid jurisdictional conflicts" as important policies of the Act, *id.* at 201, 685 *A.*2d 1319, carefully distinguishing the question whether New Jersey had jurisdiction from the question whether New Jersey should have exercised jurisdiction. The latter is the forum-non-conveniens issue, and the Court stressed that "the interests of the child are critical in determining which jurisdiction provides a more convenient forum." *Id.* at 205, 685 *A.*2d 1319. Finally, and with

particular importance for our case, the Court cited *N.J.S.A.* 2A:34–29 (b) and (h), noting that "[c]ommunication between courts furthers the goals of the Act by permitting the exchange of information so that the court best situated to consider the interest of the child will determine the question of custody." *Ibid.*

As we recently stated in *Schuyler v. Ashcraft,* 293 *N.J.Super.* 261, 277, 680 *A.2d* 765 (App.Div.1996), *certif. denied,* 147 *N.J.* 578, 688 *A.2d* 1054 (1997), "under the UCCJA, the best interests of the children now determine which state will govern these proceedings. *N.J.S.A.* 2A:34–31." We are mindful of the extraordinary procedural history in *Schuyler* that led to the conclusion that a Florida court order did not warrant full faith and credit because that court did not have personal jurisdiction over the New Jersey parent. We share the concern expressed in the concurring opinion that we afford appropriate respect to our sister state's court.

## III.

■ The New Jersey Family Part judge was appropriately concerned that he abide by the UCCJA. However, we conclude that his own factual findings regarding the proceedings in Pennsylvania were sufficient to raise a question whether the Pennsylvania court had subject-matter jurisdiction to enter a custody modification order; whether that court determined to exercise jurisdiction in compliance with the UCCJA; and therefore whether that order required deference as a matter of full faith and credit. Thus plaintiff's application for a plenary hearing to determine whether New Jersey had jurisdiction to determine custody, and if so whether New Jersey should exercise its jurisdiction, should have been granted. *See Bowden v. Bowden,* 182 *N.J.Super.* 307, 310–11, 440 *A.2d* 1160 (App.Div.1982). Where subject-matter jurisdiction does not appear to have been litigated in the Pennsylvania action, it is consistent with the UCCJA to litigate that issue in New Jersey.

Under circumstances remarkably similar to those before us, we held in *Swire v. Swire*, 202 *N.J.Super.* 289, 295, 494 *A.2d* 1035 (App.Div.1985)[6],

that the New York order of 1983 transferring custody to defendant is not entitled to recognition and enforcement in this state under *N.J.S.A.* 2A:34–41 because the jurisdictional prerequisites of the Uniform Act were not met in New York. Because of that holding we need not determine the applicability of *N.J.S.A.* 2A:34–42 as of the time of the institution of the present action. . . .

We cannot conclude that jurisdiction is automatically determined by a race to the courthouse. Rather we conclude that the letter as well as the spirit of the UCCJA requires full faith and credit to another state's custody order only where that state's court has obtained jurisdiction in substantial compliance with the UCCJA. The first element of compliance with the UCCJA is for the issuing court to have subject-matter jurisdiction. *N.J.S.A.* 2A:34–31; 23 *Pa.C.S.A.* § 5344. A court order entered without subject-matter jurisdiction is void and can be collaterally attacked. *See Durfee v. Duke*, 375 *U.S.* 106, 110–11, 84 *S.Ct.* 242, 244–45, 11 *L.Ed.*2d 186 (1963) (subject-matter jurisdiction could not be retried because the issue had been fully litigated in the original forum). *See also Pector v. Meltzer*, 298 *N.J.Super.* 414, 689 *A.2d* 814 (App.Div.1997) (dictum). Here it is apparent that the Pennsylvania court did not rule upon its own subject-matter jurisdiction, despite receipt of Ganz's *pro se* letter objecting to jurisdiction and direct communication from a New Jersey Judge who attempted to resolve jurisdiction and provided that court with the supporting documents filed in New Jersey.

Our conclusion is also consistent with the PKPA, which defines a child's "home state" virtually identically to the UCCJA[7], requires enforcement and bars modification of another state's custody order where that order is "made consistent with [the PKPA],"

---

[6] In *Swire,* however, there was some evidence that the New Jersey parent had wrongfully retained physical custody, and a plenary hearing was ordered to consider the applicability of *N.J.S.A.* 2A:34–36. *Id.* at 295–96, 494 *A.2d* 1035.

[7] *Compare N.J.S.A.* 2A:34–30e with 28 *U.S.C.A.* § 1738A(b)(4).

28 *U.S.C.A.* § 1738A(a), and provides that an order is "consistent" only if the issuing court "has jurisdiction under the law of such State." 28 *U.S.C.A.* § 1738A(c)(1). The PKPA expressly permits a state court to modify a custody determination by another state's court if the modifying court "has jurisdiction . . . and the court of the other State no longer has jurisdiction. . . ." 28 *U.S.C.A.* § 1738A(f).[8] Deference to an earlier pending custody proceeding in another state is required by the PKPA only where the "court of that other State is exercising jurisdiction consistently with" the provisions of that Act. 28 *U.S.C.A.* § 1738A(g).

The UCCJA clearly contemplates the potential for simultaneous proceedings concerning custody to be pending in two states. *See N.J.S.A.* 2A:34–34; 23 *Pa.C.S.A.* § 5347. The Act directs a court that learns of simultaneous proceedings, irrespective of which was first filed, to communicate with the other court "to the end that the issue[s] may be litigated in the more appropriate forum." *N.J.S.A.* 2A:34–34c. Having been informed of the pending Pennsylvania proceeding on December 27, the New Jersey judge acted substantially in conformity with the Act. Although he did not stay the New Jersey action, he communicated with the Pennsylvania judge to the appropriate end. However, the Pennsylvania court had the same obligation. The apparent failure of the courts to complete an exchange of information in order to see that custody "may be litigated in the more appropriate forum" suggests a failure on the part of both state trial courts to fully comply with the dictates of the Act.

Even if Pennsylvania could have been found to have jurisdiction, it is inconsistent with the UCCJA for the Pennsylvania court not to have considered whether Pennsylvania and New Jersey each had jurisdiction; if so whether Pennsylvania was an inconvenient forum;[9] to have invoked or at least considered the discretionary

---

8 *Compare N.J.S.A.* 2A:34–42a.

9 *Compare N.J.S.A.* 2A:34–35 *with* 23 *Pa.C.S.A.* § 5348.

provisions of the Act to take depositions in New Jersey; [10] or to request the New Jersey court "to hold a hearing to adduce evidence;" or to have a custody investigation made; [11] or even to require Rust to pay "travel and other necessary expenses" for Ganz's appearance in Pennsylvania.[12] We are satisfied that there was no obligation for the Family Part Judge to decline jurisdiction or to give full faith and credit to a Pennsylvania order entered in derogation of the jurisdictional requirements of the UCCJA. *See Bowden v. Bowden, supra,* 182 *N.J.Super.* at 314, 440 *A.2d* 1160.

On February 1, 1996, upon Ganz's application through counsel [13] for an order to show cause with temporary restraints, the following colloquy took place:

THE COURT: Well, I—my concern is this: You know what the Statute says. It says that the judge of the one state shall communicate with the judge of the other state and they will agree as between themselves which would be the better state to handle the matter. What happens when they don't agree?

MS. REINERS: Well, Your Honor—

THE COURT: *Because the judge in Pennsylvania doesn't agree. She doesn't listen.*

MS. REINERS: Well, apparently not.

THE COURT: *She doesn't even answer my letters.*

*[emphasis added.]*

 . . . .

You know, I have some concerns, but what really concerns me is that I called the Debbie O'Dell Senica and, in fact, as I was talking to her, we faxed to her all of the documents, if my memory serves me correctly. And before she even got to the last page, but had read, I guess, what she wanted to read, is when she said that your client should immediately contact whoever that agency is, if they would file the objection then her rights would be protected.

I know that I wrote to—I wrote to the judge under date of December the 27th and I concluded it by saying I would appreciate it if you would advise, after you

---

[10] *Compare N.J.S.A.* 2A:34–46 *with* 23 *Pa.C.S.A.* § 5359.

[11] *Compare N.J.S.A.* 2A:34–47a *with* 23 *Pa.C.S.A.* § 5360.

[12] *Compare N.J.S.A.* 2A:34–47b *with* 23 *Pa.C.S.A.* § 5352(c).

[13] Victoria Reiners, Esq., of Warren County Legal Services has represented Ganz in this New Jersey action.

have reviewed the enclosed documents, as to whether it is the intention of your court to maintain jurisdiction in view of the disputed issue of the length of time the child actually was a resident in the Commonwealth of Pennsylvania.

Now, in deference to her, she presumably will say, I answered that over the telephone because I had the fax copy, and this is only the hard copy.

So, now we have a situation where a response was filed, albeit by the litigant, who certainly is permitted to do so. I don't think there's anything in the law that says that an attorney has to file the objection.

*Now, the Court out there proceeds to enter an order which is really, in my opinion, contrary to what the law says should occur.* [emphasis added.]

## On the return date, March 29, 1996, both parties were represented, and the judge again set forth the facts before him:

THE COURT: I just wanted to get into the back—I just want to lay out some things here by way of background here. That we have a situation where the Pennsylvania Court in 1993 awards custody of the child to Ms. Ganz. Ms. Ganz moves to New Jersey. She's here for two years. There is a matter that's initiated in Pennsylvania after she has been a resident in New Jersey. That matter came on in December, if my memory serves me correctly, of 1995. And it was the subject of an order to show cause that Ms. Reiners filed at the time seeking to have New Jersey invoke jurisdiction by virtue of the fact that the child has been a resident of this State for two years and that, therefore, under the Statute, New Jersey would have jurisdiction unless there is some specific order outstanding stating that jurisdiction is retained in Pennsylvania by virtue of a prior proceeding.

And as a result of that order to show cause, I had a conference with—a telephone conference with the judge in Pennsylvania. And I faxed to the judge all of the documents that Ms. Reiners had provided to the Court that day. And the judge indicated that Ms. Ganz should have the—whatever legal services it is, the agency in Pennsylvania, I guess file an objection on her behalf.

And as a result of that, it was—I was led to believe, and it actually did occur, that nothing was going to be done immediately pending this objection being filed.

As I understand based on all of the certification that have been filed, that an effort was made by the Warren County Legal Aid Office to have Washington County Legal Aid Office represent Ms. Ganz. And for whatever reason, they opted not to.

*However, based on the conversation that I had with the judge in Pennsylvania, it was indicated that if the objection to the master's report was received, then the Court would consider the issue.*

Now, as I understand it, and I entered—what I did was the order that of—to show cause with temporary restraints was dated December the 27th. I struck out all of the relief that was requested as a result of my telephone call with the judge in Pennsylvania and stated that, "The plaintiff shall contact the Washington County Legal Aid Office to have that office file an objection to the master's report. The objection is to be filed no later than December 28, 1995." As I understand it, an objection was filed, albeit, pro se. But an objection was filed. And it set forth the

basis, namely that New Jersey should have jurisdiction by virtue of the child living here for two years.

> *For whatever reason, the Pennsylvania Court, through another judge, as I understand it, entered the order adopting the master's recommendation.* [emphasis added.]

Plaintiff argued to the trial court that the Pennsylvania court's failure to abide by the UCCJA by communicating with the judge in New Jersey

> so that this can be decided by the judges so that the parties don't have to go running around going from state to state arguing it.

Nevertheless, the judge denied further jurisdiction in New Jersey. He cited the December 28 Pennsylvania order extending time for Ganz to file objections to the Pennsylvania master's report, apparently overlooking Ganz's claim that she did not receive that order until after the January 23 Pennsylvania custody order had been entered, and that on December 28 she did write to the Pennsylvania court, *pro se.* The judge further cited a dispute over the length of the child's temporary stay in Pennsylvania beginning in November 1994, apparently ignoring the undisputed residence in New Jersey with Ganz since June 1, 1993 [14] (excepting a maximum of four months between November 1994 and early 1995).[15]

The judge concluded:

> THE COURT: My decision is go to the Appellate Division. I don't see how I have the authority to restrain the enforcement of an order in Pennsylvania [when] the one against whom it seeks to be enforced was afforded the opportunity to appear and for whatever reason, never appeared. It seems to me that the order is entitled to full faith and credit.
>
> Now, whether there is a jurisdictional issue, I don't know. I know this, there was communication between New Jersey and Pennsylvania. Pennsylvania had all of the information that you're asserting should deprive them of jurisdiction. And

---

[14] While the Pennsylvania master's report refers to Ganz having moved to New Jersey with the child "on or around December 2, 1993," the record, which includes Rust's certifications in the New Jersey case as well as his original petition in Pennsylvania, clearly shows there is no dispute that the child moved to New Jersey with Ganz on or about June 1, 1993.

[15] Rust has never claimed, nor could he in good faith under the UCCJA, that the child's stay in Pennsylvania made Pennsylvania once again the home state of the child.

they opted to proceed. Unfortunately, they proceeded without notifying me, but that doesn't mean that what they did was wrong.

The master's report that was adopted by the Pennsylvania court in its February 23, 1996 order declined to consider the jurisdictional issue, noting Ganz's attempt to raise it but apparently concluding that her failure to appear at the hearing waived her objection to jurisdiction. There was no "best interest" determination, either with respect to the exercise of jurisdiction or the merits, before custody was changed, and there was no attempt to obtain any information about the child or his living arrangements in New Jersey during the two-and-one-half years since he had moved from Pennsylvania in June 1993.

The Pennsylvania court apparently did not consider whether it should "decline to exercise its jurisdiction ... [because] it is an inconvenient forum ... [and] a court of another state is a more appropriate forum." *See N.J.S.A.* 2A:34–35a; 23 *Pa.C.S.A.* § 5348. The Act suggests the factors to be considered "in determining if it is an inconvenient forum, the overriding consideration being "if it is in the interest of the child that another state assume jurisdiction." *N.J.S.A.* 2A:34–35c; 23 *Pa.C.S.A.* § 5348(c). It is difficult to conclude that the child's best interest could have been served by a determination made without any evidence of the child's circumstances during the previous two-and-one-half years (from June 1993 through December 1995) while he has lived with his mother and an older sibling in New Jersey. The question is whether the trial court was correct in concluding that the UCCJA compelled him to dismiss Ganz's complaint.

The dilemma faced by the trial judge is created by the tension between the dual goals of the UCCJA to avoid jurisdictional conflicts and to insure each state's court adequately considers the jurisdictional issues addressed by the Act. The very situation the Act was designed to avoid has come to pass. Each parent is invoking the jurisdiction of the court of his and her own state of residence, and while the dispute continues, one or the other is deprived of significant contact with the child resulting from the

fear that physical control will determine jurisdiction and ultimately custody.

We do not intend to encourage a tug-of-war between the courts of our two states over jurisdiction any more than we would encourage a tug-of-war between parents over their child. As our Supreme Court so clearly found in *E.E.B. v. D.A., supra,*

> A custody dispute is more than a jurisdictional chess game in which winning depends on compliance with predetermined rules of play. A child is not a pawn. In exercising its discretion within the confines of UCCJA and PKPA, a court should consider not only the literal wording of the statutes but their purpose: to define and stabilize the right to custody in the best interest of the child.

[89 *N.J.* at 611, 446 *A.*2d 871.]

Nor, however, can we allow an overly literal reading of the UCCJA or PKPA to supersede the sense and the spirit of those Acts, or the best interest of the child under *N.J.S.A.* 9:2–4c, which should be read in *pari materia* with the UCCJA and the PKPA.

Our conclusion in this case is not inconsistent with our holding in *Benda v. Benda,* 236 *N.J.Super.* 365, 370, 565 *A.*2d 1121 (App.Div.1989), where

> the New Jersey judge and the Indiana judge consulted pursuant to the provisions of *N.J.S.A.* 2A:34–34(c) and concluded that Indiana, where plaintiff began custody proceedings and which was the original home state of all parties, was the proper forum. At that point, the trial judge who ultimately took over the case in New Jersey was precluded by *N.J.S.A.* 2A:34–34 from exercising jurisdiction under the general jurisdiction provisions of the Act. *N.J.S.A.* 2A:34–31a(1), (2) and (4). *See Cunningham v. Cunningham,* 719 *S.W.*2d 224, 228 (Tex.Ct.App.1986) ("when a sister state is already exercising jurisdiction *in conformity with the UCCJA* at the time of filing ... the only power that the [second] trial court has is to dismiss.")

> [emphasis added.]

When Ganz filed her complaint in New Jersey in August 1995, it appears that New Jersey had subject-matter jurisdiction as the home state, and arguably as well in the best interest of the child, to enter a custody modification order by virtue of the child's residence with Ganz in New Jersey since June 1993. *See N.J.S.A.* 2A:34–31a(1) and (2), providing in pertinent part:

> The Superior Court of the State of New Jersey has jurisdiction to make a child custody determination by initial or modification decree if:

> (1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
>
> (2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .

It further appears that Pennsylvania may no longer have had jurisdiction under the parallel statute to enter a modification decree when Rust filed for a change of custody on May 3, 1995. *See* 23 *Pa.C.S.A.* § 5344(a).

It is plain that the Pennsylvania court did not conduct a hearing or make a finding with respect either to its own continuing jurisdiction to modify custody, or the propriety of exercising such jurisdiction in light of the child's undisputed residence in New Jersey, plaintiff's attempt to challenge Pennsylvania's jurisdiction, and the New Jersey Superior Court Judge's attempt to confer "to the end that the issue may be litigated in the more appropriate forum." *N.J.S.A.* 2A:34–34c. As the record below reveals, neither the master's report nor the January 23, 1996 Pennsylvania court order adopting that report reflects any consideration, hearing, or determination that Pennsylvania had jurisdiction, or if it did, that it should exercise jurisdiction in the face of notice that New Jersey also had jurisdiction and arguably more "significant connection" and more "substantial evidence." *See N.J.S.A.* 2A:34–31a(2); 23 *Pa.C.S.A.* § 5344(a)(2). In *L.F. v. G.W.F., supra,* 183 *N.J.Super.* at 205, 443 *A.*2d 751, in support of our conclusion that New Jersey had lost jurisdiction to Pennsylvania, we took note of and quoted a comment to the UCCJA:

> [p]aragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a

particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the State. The submission of the parties to a forum, perhaps for the purposes of divorce, is not sufficient without additional factors establishing closer ties with the state.

[9 *U.L.A., Child Custody Jurisdiction,* at 124 (1979).]

The plenary hearing we order today must consider whether Pennsylvania had jurisdiction. If it did not, its order is void and should not be given full faith and credit. If Pennsylvania had jurisdiction, the New Jersey court should further consider whether the Pennsylvania court's decision to exercise jurisdiction was consistent with the Act. That determination may be the final step in answering the question whether full faith and credit should be accorded to the Pennsylvania modification decree.

We reverse the order dismissing Ganz's complaint and remand for a plenary hearing to determine jurisdiction and the proper exercise thereof. We continue the stay on enforcement of the January 23, 1996 Pennsylvania order modifying custody. We direct the trial court to schedule a plenary hearing within 45 days, to conduct that hearing on substantially continuous dates, and to entertain an application for visitation for Rust in New Jersey pending a determination of jurisdiction. Despite the entry of a final order in Pennsylvania, it would be appropriate for the judge on remand to attempt to communicate with the judge who signed that order. *See Benda v. Benda, supra,* 236 *N.J.Super.* at 372, 565 *A.*2d 1121.

We do not retain jurisdiction.