**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4841-17T2

JOAO FLORES,

      Plaintiff-Respondent,

v.

EILEEN FLORES,

      Defendant-Appellant.

_____

> Argued January 16, 2019 – Decided February 14, 2019
>
> Before Judges Koblitz, Currier, and Mayer.
>
> On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0693-15.
>
> Susan J. McCue argued the cause for appellant (Central Jersey Legal Services, Inc., attorneys; Susan J. McCue, on the briefs).
>
> Michael J. Evans argued the cause for respondent (Previte Nachlinger, PC, attorneys; Anthony W. Dunleavy, on the brief).

PER CURIAM

Defendant appeals from an April 20, 2018 order granting custody of Chris[1] to plaintiff. She also appeals from a June 22, 2018 order denying her motion for reconsideration. For the reasons that follow, we reverse and remand to the Family Part for proceedings consistent with this opinion.

On February 29, 2016, the parties divorced in New Jersey by way of a default final judgment of divorce (FJOD). As part of the FJOD, the parties executed an interspousal agreement, also dated February 29, 2016, resolving all issues related to dissolution of the marriage, including custody and parenting time. The judge who granted the divorce "found as a fact that the parties knowingly, willing and voluntarily entered into the . . . interspousal agreement." The interspousal agreement provided defendant had sole residential custody of the parties' children. However, the interspousal agreement did not designate the home state of the children for future custody determinations. Nor did it include a consent-to-jurisdiction clause. On the date the FJOD was entered, plaintiff resided in New Jersey and defendant resided in Pennsylvania.

Subsequent to the entry of the FJOD, the children resided in Pennsylvania with defendant. Plaintiff, who lived and worked in New Jersey, saw the children

---

[1] We use a pseudonym to identify the child in accordance with Rule 1:38-3(d).

A-4841-17T2

periodically. Sometimes, plaintiff visited the children in Pennsylvania. Other times, the children visited plaintiff in New Jersey.

In March 2018, defendant was hospitalized in Pennsylvania for an overdose of prescription medication. The Pennsylvania State Police contacted plaintiff regarding defendant's hospitalization. Plaintiff drove to Pennsylvania on March 13, 2018 and brought the children to New Jersey.

On March 28, 2018, plaintiff filed an ex parte "order to show cause with emergent relief," requesting custody of the children. On that date, the Family Part judge granted temporary sole physical custody of the children to plaintiff and scheduled April 13, 2018 for the return of plaintiff's order to show cause.

On April 13, 2018, defendant appeared before the court without counsel. The judge contacted the local legal services office on defendant's behalf and adjourned the hearing for one week to allow her to consult with counsel.

A week later, both parties appeared with counsel. The judge entertained counsels' arguments regarding custody of Chris but did not take testimony from the parties.[2] Defendant's counsel argued New Jersey lacked jurisdiction to make a custody determination because Chris resided with defendant in Pennsylvania

---

[2] Prior to the hearing, the parties reached a resolution as to custody of the children except for the custody of Chris.

 A-4841-17T2

since 2009 and New Jersey was not the child's home state under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -95. The judge reserved decision as to custody of Chris, indicating he would review the UCCJEA before rendering a decision. Without setting forth findings of fact or conclusions of law, the judge entered an order, dated April 20, 2018, determining "New Jersey has jurisdiction over [Chris]" and awarded sole physical custody of Chris to plaintiff.

Defendant filed a motion for reconsideration, claiming New Jersey lacked jurisdiction to enter a custody order because Chris never lived in New Jersey and New Jersey did not have exclusive, continuing jurisdiction. Alternatively, defendant requested a plenary hearing to determine custody. The judge denied defendant's motion for reconsideration, finding initial custody jurisdiction was established by the FJOD. As a result, the judge concluded New Jersey had exclusive, continuing jurisdiction to modify custody.

Defendant appeals, asserting New Jersey lacked jurisdiction to decide custody of Chris. In the alternative, defendant argues a plenary hearing should have been conducted prior to awarding custody of Chris to plaintiff. Defendant also argues the April 20 and June 22, 2018 orders were entered without the requisite findings of fact or conclusions of law.

A-4841-17T2

We afford deference to the factual findings of the family court.  Thieme v. Aucoin-Thieme, 227 N.J. 269, 282 (2016).  Such deference is based on "the family courts' special jurisdiction and expertise in family matters . . . ."  Cesare v. Cesare, 154 N.J. 394, 413 (1998).  "[A] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record."  MacKinnon v. MacKinnon, 191 N.J. 240, 253–54 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

A decision related to custody is within the sound discretion of the family court judge.  Radazzo v. Randazzo, 184 N.J. 101, 113 (2005).  However, we accord less deference when reviewing a custody order entered without a plenary hearing.  See N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) ("when no hearing takes place, no evidence is admitted, and no findings of fact are made, different principles apply.  On those rare occasions, appellate courts need not afford deference to the conclusions of the trial court.").

A plenary hearing is required for a change in custody absent exigent circumstances.  Faucett v. Vasquez, 411 N.J. Super. 108, 119 (App. Div. 2009) (holding "[a]bsent exigent circumstances, changes in custody should not be ordered without a full plenary hearing" and stressing the need for a plenary

hearing even for a temporary modification of custody). When presented with "conflicting factual averments material to the issues before it," a court "ordinarily may not resolve those issues without a plenary hearing." K.A.F. v. D.L.M., 437 N.J. Super. 123, 137-38 (App. Div. 2014).

A Family Part judge is also obligated to state fact-findings and apply those findings in rendering legal conclusions. R. 1:7-4. See also Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (citing Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)). The failure to advance reasons in support of a judicial decision results in our speculating as to the trial court's thinking. See Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). "Neither the parties nor the appellate court is 'well-served by an opinion devoid of analysis or citation to even a single case.'" Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 300 (App. Div. 2009) (quoting Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 498 (App. Div. 2000)).

The first question to be resolved is whether New Jersey has "exclusive, continuing jurisdiction" regarding custody of Chris. See N.J.S.A. 2A:34-66(a). New Jersey acquires "exclusive, continuing jurisdiction" when a New Jersey court makes an initial custody determination, such as the entry of a final

6

judgment of divorce that includes custody. See Griffith v. Tressel, 394 N.J. Super. 128, 140 (App. Div. 2007).

Here, the judge determined New Jersey had exclusive, continuing jurisdiction based on the FJOD. However, the interspousal agreement incorporated into the FJOD failed to include a provision that the parties consented to New Jersey continuing jurisdiction over custody disputes. Even if the interspousal agreement provided consent to the jurisdiction of New Jersey for resolving custody matters, there is no bright-line rule under the UCCJEA establishing the length of time such an agreement is binding on the parties. See Peregoy v. Peregoy, 358 N.J. Super. 179, 184, 193 (App. Div. 2003). "[C]onsent is only one factor to be weighed in the decision whether to exercise jurisdiction . . . ." Id. at 184.

Other factors to be considered in determining which state shall exercise jurisdiction include the strength of the child's connections to this State and the place with the most evidence relevant to the child. Id. at 197. The existence of an agreement consenting to jurisdiction for purposes of determining custody "does not preclude acquisition of concurrent jurisdiction in another state . . . ." Id. at 196. "[T]he lack of a pending action in . . . [another] state hardly signifies that New Jersey must or should exercise jurisdiction." Id. 197. Even assuming

the parties consented to New Jersey's jurisdiction to resolve custody matters, the Family Part judge was required to determine which state had the "more significant, more recent, and more substantial connections" to the child pursuant to, N.J.S.A. 2A:34-66 of the UCCJEA. Id. at 202.

N.J.S.A. 2A:34-66 provides:

> a court of this State that has made a child custody determination . . . has exclusive, continuing jurisdiction over the determination until:
>
> (1) a court of this State determines that neither the child, the child and one parent, . . . have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships;

A "child custody determination" under the UCCJEA includes any "judgment, decree, or other order of a court providing for the legal custody, physical custody or visitation with respect to a child." N.J.S.A. 2A:34-54. "A parental agreement about custody or parenting time incorporated in a judgment or order is a custody determination, and a motion to modify that determination is a custody proceeding within the meaning of N.J.S.A. 2A:34-54." Griffith, 394 N.J. Super. at 137-38.

If New Jersey acquired "exclusive, continuing jurisdiction," the Family Part judge was compelled to determine whether, since the entry of the New

Jersey custody order and plaintiff's filing of a motion to modify custody, circumstances changed so as to divest this State of jurisdiction. Ibid. Resolving this question required the Family Part judge to apply the two-prong analysis set forth in N.J.S.A. 2A:34-66(a)(1). See also Griffith, 394 N.J. Super. at 142.

The judge made no fact-findings in support of New Jersey retaining "exclusive, continuing jurisdiction" other than finding the FJOD was entered in New Jersey. The judge also failed to engage in the requisite two-part analysis to determine New Jersey had jurisdiction to resolve custody of Chris because this State has a "significant connection" to the child or there was "substantial evidence" in this State concerning the child.

Even assuming exclusive, continuing jurisdiction was proper in this case, the judge failed to consider whether New Jersey should have declined to exercise jurisdiction because this State "is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." N.J.S.A. 2A:34-71. See also Griffith, 394 N.J. Super. at 148-49. The Family Court

> may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the court's own motion, request of another court or motion of a party.

A-4841-17T2

[N.J.S.A. 2A:34-71(a).]

In considering whether New Jersey is an inconvenient forum, a court "shall allow the parties to submit information and shall consider all relevant factors," including the following: the length of time the child has resided in a state other than New Jersey; the distance between the New Jersey court and the court in the state that would assume jurisdiction, the financial circumstances of the parties; any agreement between the parties as to which state should assume jurisdiction; and the nature and location of evidence to resolve the custody issue. See N.J.S.A. 2A:34-71(b).

The judge mistakenly failed to garner testimony from the parties to determine custody of Chris. No facts were adduced regarding Chris' state of residence since the FJOD. No information was provided to the court to conclude that New Jersey, as opposed to Pennsylvania, had more substantial evidence or a more significant connection regarding Chris.

In their certifications, the parties expressed a serious concern regarding Chris' welfare if the other parent was awarded custody. The facts set forth in the parties' certifications were conflicting and unsubstantiated. Many of plaintiff's allegations regarding defendant's inability to care for Chris were based on hearsay information rather than his personal knowledge. The parents were

not given an opportunity to present testimony to the court and cross-examine the other parent for the judge to assess credibility. "[S]o drastic a decision as a change in child custody cannot be made on the basis of conflicted certifications . . . ." Peregoy, 358 N.J. Super. at 206.

Based on the absence of an evidentiary record to render a custody determination, defendant's request for a plenary hearing should have been granted to determine whether New Jersey has jurisdiction to determine custody of Chris and, if so, whether New Jersey should exercise jurisdiction. See Ganz v. Rust, 299 N.J. Super. 324, 336 (App. Div. 1997).

The judge was required to state his findings of fact and legal reasons in support of his determinations as to jurisdiction and custody. We are unable to review arguments related to custody of Chris without the judge explaining his reasoning. As a result, we are constrained to reverse and remand the matter to the Family Part for further proceedings.

We reverse and remand the matter to the Family Part to schedule a plenary hearing within forty-five days. The parenting time order dated August 2, 2018, entered on partial remand from this court, is continued until modified.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4841-17T2