236 N.J. Super. 365 (1989)
565 A.2d 1121
SHERI BENDA, PLAINTIFF-RESPONDENT,
v.
RONALD BENDA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1989.
Decided October 27, 1989.
*366 Before Judges PRESSLER, LONG and LANDAU.
Hope S. Cone argued the cause for appellant (Pitney, Hardin, Kipp & Szuch, attorneys; Clyde A. Szuch, Hope S. Cone and Joy H. Sperling, on the brief).
Bonnie C. Frost argued the cause for respondent (Einhorn & Harris, attorneys; Bonnie C. Frost, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
By leave granted, defendant Ronald Benda appeals from a November 1988 order of the trial judge purporting to exercise jurisdiction over this case pursuant to the Uniform Child Custody Jurisdiction Act (N.J.S.A. 2A:34-28 et seq. (U.C.C.J.A.)) and enjoining defendant from proceeding with a pending Indiana action involving the same subject matter. Because the order has been rendered moot by subsequent events in the case, the appeal is dismissed.
Plaintiff Sheri Benda and defendant were married in Las Vegas, Nevada, in 1984. Two children were born to them, Rachel in 1985 and Hillary in 1987. During the early years of the marriage, the parties lived in California where both were members of the Marine Corps. In 1986, after their discharge from the Marines, the parties moved to Terre Haute, Indiana where they purchased a home. In March 1988, plaintiff sued defendant for divorce in Indiana seeking, among other things, custody of the two children. At that time, plaintiff obtained a *367 restraining order against any contact by defendant with her or the children based on grave allegations of domestic violence. The parties reached a preliminary agreement as to custody and visitation in April 1988, which apparently was approved by the trial judge. According to the agreement, plaintiff was granted temporary custody of the children provided she would reside with the children at Coda House, a shelter in Indiana. Defendant was given supervised visitation. The restraining order remained in effect. Between April and June, 1988, both parties filed motions and orders to show cause in Indiana seeking various types of relief.
In June 1988, plaintiff came with the children to New Jersey. On July 28, she filed a Domestic Violence Complaint pursuant to N.J.S.A. 2C:25-12, alleging acts of violence by defendant in Indiana as a result of which a temporary restraining order was issued against defendant. Under the Order, which is not challenged on this appeal, plaintiff was granted temporary custody of the children. On August 3, plaintiff filed a complaint and order to show cause in Superior Court, Morris County, seeking permanent custody of the children and requesting the court to assume emergency jurisdiction over this case under N.J.S.A. 2A:34-28 et seq. and N.J.S.A. 9:2-7. She also filed a motion in Indiana to stay the Indiana action. Defendant moved in Indiana for the return of the children. On August 5, the Indiana court denied plaintiff's request for a stay, ordered the children returned and found plaintiff in contempt of the preliminary order.
On August 9, plaintiff filed a motion for reconsideration in Indiana which was denied with the following docket notation:
Pursuant to the Uniform Child Custody Act and having consulted with Judge Friend in the Superior Court, New Jersey, Morris County, and by agreement determining jurisdiction of this cause vests in Clay Circuit Court, Petition to Reconsider is denied.
On August 17, plaintiff filed a motion to dismiss the Indiana action. This motion was denied on August 18 with the following docket notation:

*368 ... on August 12, 1988 this court entered an order pursuant to the Uniform Child Custody Act. That after conference with Judge Friend in Superior Court, Morris County, New Jersey, it was unanimously decided and agreed that jurisdiction of the cause vested in Clay County, Indiana.
Meanwhile, in August, New Jersey judges issued final Domestic Violence orders continuing the prohibition against defendant contacting the plaintiff or the children. (These orders are not challenged here.) The custody case was scheduled for a "best interest/jurisdictional" hearing on October 3, 1988. Prior to the beginning of the hearing, the trial judge properly limited the case to the question of "emergency jurisdiction" under N.J.S.A. 2A:34-31a(3). At the hearing, a number of fact witnesses testified, including plaintiff and defendant and several experts. The judge then ruled that he had jurisdiction both under the emergency jurisdiction section and the best interests provision of N.J.S.A. 2A:34-31. He restrained defendant from proceeding with the custody hearing in Indiana scheduled for December 2, 1988. As to the simultaneous jurisdiction provision of N.J.S.A. 2A:34-34, the judge stated that he and the Indiana judge were at "logger heads" and that there was no reason to confer. He granted temporary custody of the children to plaintiff; directed that all proceedings concerning the custody, support and maintenance of the children were to be held in New Jersey; and ruled that if the defendant refused to participate in the New Jersey proceedings, the temporary custody decree would become final.
On December 2, 1988, the Indiana trial judge proceeded, in the absence of plaintiff, to enter a final order dissolving the parties' marriage, distributing the marital property and awarding defendant custody of the children. Plaintiff thereafter sought to hold defendant in contempt in New Jersey for proceeding with the Indiana action. The contempt proceeding was stayed pending the outcome of this appeal.
This case is a model for the application of U.C.C.J.A. Indeed, many of the legislative findings set forth in N.J.S.A. *369 2A:34-29 are precisely on target here. The point of the Act is to:
a. Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effect on their well-being;
b. Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
c. Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state;
d. Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
e. Deter abductions and other unilateral removals of children undertaken to obtain custody awards;
f. Avoid relitigation of custody decision of other states in this State insofar as feasible;
g. Facilitate the enforcement of custody decrees of other states; and
h. Promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child.
Where as here, two separate litigations involving child custody are proceeding in different jurisdictions, a classic scenario for the application of the remedial provisions of the Act is presented. In this respect, N.J.S.A. 2A:34-34 provides that:
a. A court of this State shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.
b. Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties pursuant to section 10 of this act and shall consult the child custody registry established pursuant to section 17 of this act concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.
c. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate *370 with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 20 through 23. If a court of this State has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.
Here, the New Jersey judge and the Indiana judge consulted pursuant to the provisions of N.J.S.A. 2A:34-34(c) and concluded that Indiana, where plaintiff began custody proceedings and which was the original home state of all parties, was the proper forum. At that point, the trial judge who ultimately took over the case in New Jersey was precluded by N.J.S.A. 2A:34-34 from exercising jurisdiction under the general jurisdiction provisions of the Act. N.J.S.A. 2A:34-31a(1), (2) and (4). See Cunningham v. Cunningham, 719 S.W.2d 224, 228 (Tex. Ct. App. 1986) ("When a sister state is already exercising jurisdiction in conformity with the U.C.C.J.A. at the time of filing ... the only power that the [second] trial court has is to dismiss.") Although the trial judge might have remedied the prohibition by instituting a new consultation with Indiana with a view toward Indiana ceding jurisdiction, absent such action and concession by Indiana, the prohibition against the exercise of general jurisdiction was absolute.
The single exception to this rule is found in N.J.S.A. 2A:34-31(a)(3)(ii) which recognizes the exercise of temporary emergency jurisdiction where the child is physically present in New Jersey and "it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected ..." Here, plaintiff's claim of emergency was footed in the Indiana Grand Jury's failure to indict defendant which caused plaintiff to feel that "she would never be safe" from him. To be sure, plaintiff's substantive claims against defendant are serious ones. But the extent of her grievance is not the issue in a case such as this. The issue is whether there is an emergency involving the children which cannot be addressed effectively in the forum *371 state chosen pursuant to the provisions of N.J.S.A. 2A:34-34(c). We have serious doubts as to whether the precipitating event here was sufficient to trigger the emergency provisions of the U.C.C.J.A. But even assuming that plaintiff presented a sufficient basis to invoke New Jersey emergency jurisdiction, that jurisdiction was clearly circumscribed and only allowed the judge to take interim protective measures with respect to the children, not to usurp the jurisdiction of the Indiana courts. In Hache v. Riley, 186 N.J. Super. 119, 127-128 (Ch.Div. 1982), this limitation was fully explored:
[E]xercise of jurisdiction under the "abandonment" and "emergency" provision of the U.C.C.J.A. does not take on the same characteristics or implications as the exercise of jurisdiction under the other provisions of the act. Assumption of emergency jurisdiction is an assumption of temporary jurisdiction only; it is meant solely to prevent irreparable and immediate harm to children and, absent satisfaction of other U.C.C.J.A. jurisdictional prerequisites, does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody deposition. (citing Fry v. Ball, 190 Colo. 128, 544 P.2d 402 (1975)).
* * * * * * * *
There are, of course, legitimate occasions for the exercise of emergency jurisdiction. However, this special power to take protective measures does not encompass jurisdiction to make a permanent custody determination or to modify the custody decree of a court with continuing jurisdiction. Emergency jurisdiction confers authority to make temporary orders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the Act. (Emphasis added; citation omitted.)
See also Nelson v. Nelson, 433 So.2d 1015, 1019 (Fla. Dist. Ct. App.Dist. 1983) (finding that emergency jurisdiction under the U.C.C.J.A. could be used only "to issue a temporary protective order which will preserve the status quo for such limited time as is required to permit the petitioner to apply for a change of permanent custody to the state which has jurisdiction over such a petition under the provisions of U.C.C.J.A.... (emphasis in original)); Gerber v. Gerber, 468 So.2d 1061, 1062 (Fla. Dist. Ct. App. 1985) (extending the rationale in Nelson to cover those situations under the U.C.C.J.A. where a temporary, rather than a permanent, custody decree has been rendered by another state).
*372 In short, the trial judge had the power to enter an interim protective order for the benefit of the children, no more and no less. He lacked the power to award custody (other than on a temporary basis) or to enjoin defendant from participating in the pending Indiana proceedings. Most important is that once Indiana acted, entering final judgment in December 1988, the temporary New Jersey order lost its efficacy, no actions in furtherance of it were possible, and the subject matter of this appeal was rendered moot. Accordingly, the appeal is dismissed.
We note that the Indiana judgment which is the only operative order in the case, is presently on appeal. Irrespective of how the appeal is decided, the emergent order in this case, having been vitiated, will not be revived. Moreover, it seems to us that the Indiana courts will again be faced with an initial U.C.C.J.A. jurisdiction question requiring consultation with New Jersey because plaintiff and the children have resided here continuously since July of 1988.
Dismissed.