**Bobbie J. McDOW, Appellant,**

v.

**Cheri Lynn McDOW and Nathan D. Schluter, Appellees.**

**No. S–6960.**

Supreme Court of Alaska.

Jan. 12, 1996.

Johnny O. Gibbons, Dickerson & Gibbons, Inc., Anchorage, for Appellant.

Cheri Lynn McDow, pro se, Bellevue, Washington.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and CARPENETI, Justice Pro Tem.*

*OPINION*

COMPTON, Chief Justice.

Bobbie McDow appeals the superior court's dismissal of her complaint seeking custody of her sister's child. The superior court held that it did not have jurisdiction to hear her case. We affirm.

---

* Sitting by assignment made pursuant to article     IV, section 16 of the Alaska Constitution.

## I. FACTS AND PROCEEDINGS

Cheri Lynn McDow (Cheri) and her husband, Nathan Schluter (Nathan), had one child, Ralph Schluter (Ralph), who was born in May 1988 in Minneapolis, Minnesota. Cheri and Nathan were divorced in Washington State in March 1990. The Washington divorce decree awarded custody of Ralph to Cheri.

On April 29, 1994, Cheri, who still lives in Washington State, sent Ralph to Anchorage to stay with her sister, Bobbie McDow (Bobbie). On the same day, Cheri executed a release granting to Bobbie "total responsibility" over Ralph. Cheri began asking Bobbie to return Ralph in June. Bobbie refused her requests, believing Ralph would not be safe with Cheri.

On October 31 Bobbie filed a custody complaint in Alaska superior court, alleging that Ralph would "suffer irreparable harm" if he were returned to Cheri. In support, Bobbie filed her own affidavit, which stated that Cheri had committed acts against Ralph which Bobbie considered "nothing short of abuse"; an affidavit from Peggy McDow, the mother of Cheri and Bobbie, averring that she believed "a stable and loving environment for Ralph is at Bobbie's home"; an affidavit from W. Christopher Decker, a former boyfriend of Cheri's, who recounted his experiences living with Cheri and Ralph; and an affidavit from Michael Weingarten, M.A., who interviewed Ralph three times at the Human Relations Center in Anchorage. Mr. Weingarten identified the "presenting problems" as "probable neglect by his maternal mother, instability and multiple moves, and probable sexual abuse." He recommended

that "Ralph continue his placement with Bobbie McDow."

Cheri moved to dismiss the complaint for lack of jurisdiction. The superior court granted the motion, stating:

> Upon review of the affidavits filed by the parties, this court concludes that the plaintiff has improperly retained the child after a temporary relinquishment of physical custody by the mother. On the facts presented, this court does not find that a current emergency exists necessary for this court to assert its jurisdiction to protect the child.
>
> The State of Washington is the home state of the minor child; therefore, this court will not exercise its jurisdiction to modify the custody decree entered in the State of Washington. . . .

Bobbie appeals.

## II. DISCUSSION

■ Jurisdiction over child custody proceedings is governed by the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, and the Uniform Child Custody Jurisdiction Act (UCCJA), codified in Alaska at AS 25.30.010–.910. Under the combined impact of these acts, the superior court may not modify the Washington custody decree if the Washington court which issued it retains modification jurisdiction. *Wanamaker v. Scott*, 788 P.2d 712, 715 (Alaska 1990) ("Under the [PKPA] a non-decree state court may not modify a custody order as long as the decree state has jurisdiction.") (footnote omitted); *see* AS 25.30.130(a)[1]; *Szmyd v. Szmyd*, 641 P.2d 14, 16 (Alaska 1982) ("[D]ecree-state courts retain a continuing jurisdiction to modify a custody decree.") (footnote omitted).[2]

---

1. AS 25.30.130(a) provides:

   If a court of another state has made a custody decree, a superior court of this state may not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree, and (2) the court of this state has jurisdiction.

2. Bobbie argues that the superior court has jurisdiction to hear her complaint under AS

25.30.020(a)(2), which provides that the superior court has jurisdiction to make a child custody determination if "the child is physically present in this state and is a child in need of aid as defined in AS 47.10.990." This "emergency jurisdiction" provision enables "a state court, other than one in the state having continuing jurisdiction under an original custody order, [to exercise] temporary jurisdiction in an emergency situation." *Trader v. Darrow*, 630 A.2d 634, 638 (Del.1993); *see In re D.S.K.*, 792 P.2d 118, 127 (Utah App.1990) ("Where a grave emergency exists affecting the immediate needs and welfare of the child, a . . . court may enter appropriate

Whether the Washington court still has jurisdiction to modify its decree is necessarily a question of Washington law. *See Bock v. Bock,* 824 P.2d 723, 724 (Alaska 1992). The Supreme Court of Washington has recently held that a "court which enters a child custody decree continues to have jurisdiction to modify that decree so long as one of the parties remains in the state and so long as the child's contact with the state continues to be more than slight." *Greenlaw v. Smith,* 123 Wash.2d 593, 869 P.2d 1024, 1027 (1994). In reaching this result, *Greenlaw* relied on the work of several scholars, including Professor Brigitte Bodenheimer, a drafter of and reporter for the UCCJA. Professor Bodenheimer has opined:

> Exclusive continuing [modification] jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.

Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA,* 14 Fam.L.Q. 203, 214–15 (1981) (quoted in *Greenlaw,* 869

P.2d at 1030). *Greenlaw* also relied on cases from other jurisdictions which reached the same result. *See Greenlaw,* 869 P.2d at 1031 ("It appears that the majority of appellate courts which have addressed the issue presented here hold that the state in which the initial decree was entered has *exclusive* continuing jurisdiction to modify the initial decree if: (1) one of the parents continues to reside in the decree state; and (2) the child continues to have some connection with the decree state, such as visitation.") (emphasis in original); *see, e.g., Kumar v. Superior Court,* 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003, 1008 (1982).

The rule announced in *Greenlaw* is based on " 'the strong presumption [ ] that the decree state will continue to have modification jurisdiction until it loses all or almost all connection with the child.' " *Greenlaw,* 869 P.2d at 1033 (quoting *Kumar,* 652 P.2d at 1009). The rule appropriately distinguishes between the *initial* jurisdiction determination under the UCCJA, where "maximum rather than minimum contact" with a state is required (UCCJA § 3, comment, 9 U.L.A. 145 (1988)), and a court's jurisdiction to *modify* its prior custody decree, where the child's contact with the decree state need only be more than "slight." *See* UCCJA § 14, comment, 9 U.L.A. at 292.[3]

■ As *Greenlaw* notes, the "PKPA should be considered whenever the court is

orders for the protection of the child present in [that state] even if its orders contravene those of a sister state that still retains jurisdiction over custody."). Emergency jurisdiction under the UCCJA confers authority to make only temporary orders, pending proceedings in the state with continuing jurisdiction under the UCCJA. *Darrow, supra; Benda v. Benda,* 236 N.J.Super. 365, 565 A.2d 1121, 1124 (App.1989) ("Assumption of emergency jurisdiction is an assumption of temporary jurisdiction only; it is meant solely to prevent irreparable and immediate harm to children and absent satisfaction of other UCCJA jurisdictional prerequisites, does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody [disposition]."); Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA,* 14 Fam.L.Q. 203, 225–26 (1981) ("[T]his special power to take protective measures does not encompass jurisdiction to make permanent custody determinations or to modify the custody decree of a court with continuing jurisdiction."). Emergency jurisdiction is "reserved for extraordinary circumstances

where there is an immediate threat of abuse or neglect." *D.S.K.,* 792 P.2d at 128 (Trial court's findings were insufficient to justify modification of out-of-state child custody order pursuant to emergency jurisdiction provision of the UCCJA where court found neglect but did not make finding that neglect was the type of compelling emergency that justified extraordinary relief.); UCCJA § 3, comment, 9 U.L.A. 145 (1988) ("[Emergency jurisdiction] is reserved for extraordinary circumstances. ... When there is child neglect without emergency or abandonment, jurisdiction cannot be based on this [provision].") (citation omitted). In the present case, the superior court found that no emergency existed sufficient for the court to assert jurisdiction to protect the child. Our review of the record convinces us that this finding was not clearly erroneous.

**3.** This observation does not, however, apply to Alaska's version of the UCCJA. Since Alaska lacks significant connection jurisdiction, Alaska's courts do not retain modification jurisdiction

asked to determine which of two or more states has jurisdiction to decide a custody dispute." *Greenlaw*, 869 P.2d at 1031. The PKPA "attempts to more clearly limit the circumstances under which a court may modify the custody decree of another state." *Id.* Under the PKPA,

> [t]he jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) [4] of this section continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C. § 1738A(d). The PKPA creates a presumption, similar to the presumption created by the UCCJA, that a decree state has "continuing jurisdiction to modify its own order and other states must decline to modify until the decree state loses or declines jurisdiction." *Greenlaw*, 869 P.2d at 1031; *see also In re D.S.K.*, 792 P.2d 118, 129 (Utah App.1990) ("The PKPA uses language more specific than the UCCJA in limiting modification jurisdiction. The language clearly eliminates the possibility of concurrent jurisdiction by conferring exclusive modification jurisdiction upon the state which rendered the initial decree.").

■ Applying the rule in *Greenlaw* to the facts of this case, we conclude that the Washington court issuing the initial custody decree has continuing and exclusive jurisdiction to modify it. There is no dispute that Washington had jurisdiction to enter the initial decree. Cheri continues to reside in Washing-

ton and Ralph's connections with Washington are "more than slight." In *Greenlaw*, the court found that a child's connections with Washington were "more than slight" even though the child had not lived in Washington for over five years.[5] *Id.* at 1026, 1032. Ralph lived in Washington for over five years, and substantial evidence regarding Ralph's care, education, and relationships exists in Washington.

### III. CONCLUSION

Under the combined effects of the PKPA and the UCCJA, Washington has continuing and exclusive jurisdiction to modify its custody decree. The superior court therefore properly dismissed Bobbie's complaint. The judgment of the superior court is affirmed.[6]

---

when a child acquires a new home state. *Bock v. Bock*, 824 P.2d 723, 724 (Alaska 1992).

**4.** Subsection (c)(1) of the PKPA provides:

> A child custody determination made by a court of a State is consistent with the provisions of this section only if . . . such court has jurisdiction under the law of such State. . . .
> 28 U.S.C. § 1738A(c)(1).

**5.** The court based its conclusion that the child's connection with Washington was more than slight on the following facts: 1) the child visited his father in Washington; 2) the child's extended family was in Washington; 3) the child's counselor was in Washington; 4) the child preferred to live with his father in Washington; and 5) "[s]ubstantial evidence regarding the child's future

care, education, social development and family and other personal relationships exist in the state of Washington." *Greenlaw*, 869 P.2d at 1032.

**6.** Bobbie argues that the superior court erred in "granting an award of attorney's fees to Cheri." On the record before us, it appears that the superior court has not awarded Cheri attorney's fees. The last document on the subject in the trial court file is an April 28, 1995 Order directing Cheri to submit a financial declaration form so that "the court could determine if the attorney's fees should be granted." The Order indicated that if Cheri failed to submit the form within 10 days the motion for attorney's fees would be denied. Cheri apparently never filed the form, and no further action was taken on her motion for attorney's fees.