Donald A. NADEAU

v.

Sharon NADEAU.

No. 97–389–M.P.

Supreme Court of Rhode Island.

July 21, 1998.

Timothy Conlon, Providence, Anthony J. Cordeiro, Warwick, for plaintiff.

Carolyn T. Barone, Warwick, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case is before the Court on the petition for certiorari of the defendant, Sharon Nadeau (Sharon). The defendant seeks review of a preliminary decree of the Rhode Island Family Court in which the trial justice determined that even though the Connecticut Superior Court had apparently assumed emergency jurisdiction over the underlying custody and divorce proceedings pursuant to the provisions of the Parental Kidnapping Prevention Act (PKPA), as codified in 28 U.S.C. § 1738A, the Rhode Island Family Court was the appropriate forum to assume jurisdiction with respect to a full hearing on the merits relating to custody and visitation of the minor children. For the foregoing reasons we affirm the trial justice and quash the writ heretofore issued. The facts of the case insofar as pertinent are as follows.

## I

### The Facts and Travel

On April 3, 1997, Sharon and her five minor children left their home in Coventry, Rhode Island, and fled to the State of Connecticut, the state in which she grew up and where her parents currently reside. Sharon alleges that the impetus for her having left the family home was years of physical, physiological, and emotional abuse at the hands of her husband, Donald A. Nadeau, M.D. (Donald). After her arrival in Connecticut, Sharon filed a form entitled "Application For Relief From Abuse" with the Connecticut Superior Court and sought restraining and protective orders against Donald, as well as temporary custody of the couple's minor children. An ex parte order granting all the requested relief was issued immediately, and a full hearing on the abuse complaint was scheduled for April 21, 1997. Sharon maintains that under the laws of the State of Connecticut, the Connecticut Superior Court has jurisdiction over the subject-matter of the abuse complaint and personal jurisdiction over Donald. Donald was served personally with this process by a member of the Kent County's Sheriff's Department on April 8, 1997. At the same time Sharon filed the Application For Relief From Abuse, she also filed a complaint for divorce. Donald was served personally with this complaint on April 8, 1997, as well.

One week later, on April 15, 1997, Donald filed a complaint for divorce in the Rhode Island Family Court. He also filed an ex parte motion, seeking custody of the children, restraining orders against Sharon, and other miscellaneous protective relief as well. Donald's divorce complaint failed to disclose that custody proceedings were pending in Connecticut or that Sharon had been granted temporary sole physical custody of the children. He did acknowledge this fact, however, in his ex parte motion for restraining orders and custody but stated that Sharon's action in the State of Connecticut was without cause and furthermore that Connecticut was without jurisdiction in the matter. The motion further alleged that Sharon suffered from serious psychological problems and that as a result Donald feared for the safety of his children. Thereafter a justice of the Rhode Island Family Court entered an order awarding temporary sole custody of the children to Donald with the directive that Sharon return them to Rhode Island.

On April 21, 1997, the scheduled hearing in Connecticut commenced. There is no record of these proceedings nor any indication that the Connecticut trial justice tried to communicate with the Rhode Island Family Court prior to proceeding. Nevertheless the trial justice awarded sole custody and physical possession of the children to Sharon. Furthermore Donald was restrained from visiting or contacting his family. Donald was personally served in Rhode Island with the resulting court order by a member of the Kent County Sheriff's Department on April 25, 1997.

On April 29, 1997, Donald appeared specially in the Connecticut Superior Court and moved to dismiss the Connecticut divorce action for lack of jurisdiction He did not, however, file a motion to vacate the orders entered pursuant to the April 21, 1997 hearing. On May 5, 1997, Donald also filed an amended ex parte motion for relief in the Rhode Island Family Court, asking for custody of his children and a pronouncement from the court that pursuant to the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), as codified in G.L.1956 chapter 14 of title 15, Rhode Island was the proper state to assume jurisdiction over the custody and divorce proceedings. It is unclear from the record whether the Family Court trial justice knew about the orders that had previously been entered in Connecticut. Nevertheless he granted the amended ex parte order, which awarded temporary custody of the children to Donald, restrained Sharon from removing the children from Rhode Island, and pursuant to the UCCJA assumed jurisdiction on behalf of the State of Rhode Island over both the custody and divorce proceedings.

On May 12, 1997, Sharon filed a motion in Rhode Island Family Court, seeking a dismissal of all ex parte orders previously entered by that court. A hearing on the motion was scheduled for June 23, 1997. During the course of that hearing, however, the Family Court trial justice suspended the proceedings so that he could communicate with the judge presiding over the case in the Connecticut Superior Court and discern what action Connecticut had taken relative to the instant dispute. The trial justice was not able to reach the Connecticut trial justice and continued the matter so that he could arrange a telephone conference among the two justices and the parties' respective counsel.

Unfortunately the proposed telephone conversation never occurred. In the meantime Donald's motion to dismiss the Connecticut divorce action came before the Connecticut Superior Court, at which time he argued forum non convenes, lack of subject-matter jurisdiction, lack of personal jurisdiction, lack of jurisdiction under the UCCJA, and inappropriate situs. The trial justice denied the motion and found that even though the jurisdiction pursuant to the UCCJA is discretionary, he saw no need to decline jurisdiction because the children's contacts in the State of Rhode Island were "really superficial." [1] "I just can't conceive of any substantial ties as far as the children are concerned with the State of Rhode Island." On July 24, 1997, Donald executed a stipulation in conjunction with the Connecticut divorce action, agreeing to pay child support to Sharon.

On July 28, 1997, the hearing in Rhode Island Family Court reconvened. The trial

---

1. Connecticut's codification of the UCCJA is found in chapter 815 of title 46b of the Connecticut General Statutes and for purposes relevant to our analysis is constructed similarly to our own statute. The section that applies in the instant case and the basis upon which the Connecticut court presumably exerted jurisdiction is contained in § 46b–93 and reads in pertinent part:

"(a) A court of this state shall have jurisdiction to make a child custody determination by initial or modification decree if: (1) This state (A) is the home state of the child at the time of commencement of the proceedings, or (B) had been the child's home state within six months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or (2) *it is in the best interest of the child that a court of this state assume jurisdiction because* (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state,

and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or (3) *the child is physically present in this state and* (A) the child has been abandoned or (B) *it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent* ***.

"(b) Except under subdivisions (3) and (4) of subsection (a) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination." (Emphases added.)

" 'Home state' " is defined in § 46b–92(6) as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of such persons."

justice stated that in compliance with § 15–14–7(c) of the UCCJA, he had attempted to contact the Connecticut Superior Court trial justice, but did not receive a response.[2] He then proceeded to address the merits of Sharon's motion to dismiss and stated that at the start, any analysis had to begin by addressing the question of jurisdiction as defined by the PKPA. The trial justice stated that the PKPA, which is intended to prevent jurisdictional conflict, prohibits the exercise of concurrent jurisdiction when another court is exercising jurisdiction consistent with the provisions of the act. The trial justice further stated that in circumstances wherein the state law (the UCCJA) is inconsistent with the PKPA, the PKPA and its provisions would take precedence.

The trial justice found that because the children had resided in Rhode Island for at least six months before moving with their mother to Connecticut, Rhode Island was the children's "home state" for purposes of the PKPA.[3] The trial justice noted that Connecticut appeared to have assumed jurisdiction pursuant to the "significant contact" component of the PKPA, but upon review of the act he held that the PKPA "actually codifies a preference for home state jurisdiction." Concerning Sharon's allegations of abuse, the trial justice found that although the Connecticut Superior Court had never referred to the exercise of emergency jurisdiction, it was entirely appropriate under either the PKPA or the UCCJA for Connecticut to exercise jurisdiction on an emergency basis and issue temporary orders. He further stated, however, that emergency jurisdiction is limited in nature and confers authority to make only temporary orders and that, therefore, it was improper for Connecticut to continue exercising jurisdiction over the custody proceedings. Accordingly with respect to the full hearing

on the issues of custody and visitation, the trial justice assumed jurisdiction on behalf of the State of Rhode Island in accordance with the provisions of the PKPA and the UCCJA. Sharon sought relief from this Court by way of petition for writ of certiorari and for a stay of the decision of the trial justice, both of which were granted.

In support of her petition Sharon argues that the trial justice committed reversible error by failing to give full faith and credit to the valid Connecticut custody order, which order was never challenged and was entered prior to the commencement of any proceedings in Rhode Island. Sharon maintains that since the Connecticut order is valid pursuant to the terms of the PKPA and Connecticut law, the Rhode Island Family Court had no choice but to enforce the order and was prohibited from modifying it. Sharon further argues that contrary to the finding of the trial justice, the exercise of emergency jurisdiction under the PKPA and the UCCJA by the Connecticut Superior Court allows that court to continue to exercise jurisdiction over custody matters and mandates compliance with the Connecticut custody order. Conversely Donald maintains that the Connecticut orders were not issued in substantial compliance with the provisions of the PKPA or the UCCJA and that, therefore, Rhode Island, the home state of the children, is not precluded from exercising jurisdiction. Donald also alleges that Sharon has failed to abide by this Court's order during the pendency of this petition and that, therefore, the petition should be denied.

## II

## The PKPA and the UCCJA

At the outset we note that although the Connecticut Superior Court analyzed the

---

**2.** General Laws 1956 § 15–14–7(c), "Simultaneous proceedings in other states," provides in pertinent part:

"If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with §§ 15–14–20 through 15–14–23. If

the court has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum."

**3.** This point was conceded by Sharon's counsel as well.

jurisdictional question pursuant to the provisions of the UCCJA, the Rhode Island Family Court concluded that the PKPA was controlling and therefore rendered its decision in a manner consistent with the provisions of the federal statute. In an attempt to resolve any lingering doubt that may exist with respect to the scope and the applicability of both the PKPA and the UCCJA, we begin our analysis with a brief review of the background, language, and legislative histories of the acts.

In response to continuing confusion concerning the applicability of the full-faith-and credit clause of the United States Constitution to interstate custody decrees and in an attempt "to stem the proliferation of jurisdiction in custody litigation," the Rhode Island Legislature adopted the UCCJA in 1978. *See Paolino v. Paolino,* 420 A.2d 830, 835 (R.I.1980). *See also Pratt v. Pratt,* 431 A.2d 405, 407 (R.I.1981). The act, which was intended to address the problem of the " 'interstate' " child, evinces "a legislative intent to minimize jurisdictional competition and conflict so that custody decisions are rendered in the state best able to protect the welfare of the child." *Paolino,* 420 A.2d at 835. Accordingly the UCCJA prescribed uniform standards to be applied in determining jurisdiction over custody matters and obligated those states that enacted the UCCJA to enforce the determination made by the state with proper jurisdiction. *See Thompson v. Thompson,* 484 U.S. 174, 181, 108 S.Ct. 513, 517, 98 L.Ed.2d 512, 521 (1988). Unfortunately a number of states initially refused to enact the UCCJA, and those that did " 'made substantive modifications which diluted the uniformity the UCCJA was intended to promote.' " *Sheila L. v. Ronald P.M.,* 195 W.Va. 210, 465 S.E.2d 210, 218 (1995); *see also Thompson,* 484 U.S. at 181, 108 S.Ct. at 517, 98 L.Ed.2d at 521. As a consequence "noncustodial parents still had reason to snatch their children and petition the courts of any of a number of haven States for sole custody." *Thompson,* 484 U.S. at 181, 108 S.Ct. at 517, 98 L.Ed.2d at 521.

Seeking to remedy this problem, Congress enacted the PKPA. Like its predecessor, the PKPA was intended to avoid jurisdictional competition and conflict between state courts and to deter kidnapping by a parent who lost a custody battle in one state and attempted to relitigate the issue in another state. *See Porter v. Porter,* 684 A.2d 259, 262 (R.I.1996); *State v. Kane,* 625 A.2d 1361, 1364 (R.I.1993). Accordingly the PKPA "imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act." *Thompson,* 484 U.S. at 175–76, 108 S.Ct. at 514, 98 L.Ed.2d at 518. In order for a state court's custody decree to be consistent with the provisions of the act, the state must have jurisdiction under its local law (the UCCJA) and must satisfy one of the five conditions set forth in 28 U.S.C. § 1738A(c)(2). *See* 484 U.S. at 176–77, 108 S.Ct. at 514–15, 98 L.Ed.2d at 518. Furthermore, "[o]nce a State exercises jurisdiction consistently with the provisions of the Act, no other State may exercise concurrent jurisdiction over the custody dispute *** even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree." *Id.* at 177, 108 S.Ct. at 515, 98 L.Ed.2d at 518–19. *See also* 28 U.S.C. § 1738A(g).

▉ In spite of the apparent similarities between the two acts, we note that they are not identical. The PKPA is not a radical departure from the UCCJA and is in fact quite similar. The differences that do exist result from an attempt to use the PKPA to address the inadequacies of the UCCJA. *See* Scott T. Dickens, *The Parental Kidnapping Prevention Act: Application and Interpretation,* 23 J.Fam.L. 419, 426 (1984–85). Accordingly "questions of jurisdiction arising in interstate child custody matters must now be decided by reference to the PKPA." *Flannery v.. Stephenson,* 416 So.2d 1034, 1038 (Ala.Civ.App.1982). *See also McDow v. McDow,* 908 P.2d 1049, 1052–53 (Alaska 1996). To the extent that the PKPA conflicts with the UCCJA, the PKPA preempts the provision of the state statute. *See, e.g., Flannery,* 416 So.2d at 1038; *Columb v. Columb,* 161 Vt. 103, 633 A.2d 689, 690 (1993); *Sheila L.,* 465 S.E.2d at 218.

■ With this statutory framework in mind, we turn our attention to the precise language of the PKPA, codified in 28 U.S.C. § 1738A, "Full faith and credit given to child custody determinations," which provides in part:

"(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

"(b) As used in this section, the term—
***

(4) 'home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months ***;

(5) 'modification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;
***

"(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding ***;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
***

"(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
***

"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction or it has declined to exercise such jurisdiction to modify such determination.

"(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."

Accordingly the PKPA establishes a hierarchy of jurisdictional preferences: "(1) continuing jurisdiction; (2) home-state jurisdiction; (3) significant connection jurisdiction; and, (4) jurisdiction when no other jurisdictional basis is available." *Murphy v. Danforth*, 323 Ark. 482, 915 S.W.2d 697, 701 (1996). Sharon maintains that the Connecticut Superior Court has continuing jurisdiction under the PKPA by virtue of the custody order it previously entered and that pursuant to the prescriptions of 28 U.S.C. § 1738A(d) the Rhode Island Family Court had no choice but to enforce the order and was prohibited from modifying it. We disagree.

## A. Continuing Jurisdiction

Section 1738A(d) of 28 U.S.C. provides for continuing jurisdiction of the state that has made the initial child custody determination "*as long as* the requirement of subsection (c)(1) of this section *continues to be met* and such State remains the residence of the child or of any contestant." (Emphases added.) Subsection (c)(1) requires that the court have jurisdiction under the laws of its own state. Therefore in order for the Connecticut Superior Court to have continuing jurisdiction under the PKPA, it must continue to have jurisdiction over the matter as defined by the laws of its own state. A review of the record indicates that the Connecticut Superior Court assumed jurisdiction over the underlying custody proceedings in response to the Application For Relief From Abuse filed by Sharon. Consequently we agree with the trial justice and conclude that even though the Connecticut trial justice never referred to the exercise of emergency jurisdiction, the Connecticut Superior Court had in fact assumed jurisdiction pursuant to the emergency provisions of the PKPA and the UCCJA. Accordingly the question becomes whether the exercise of emergency jurisdiction is continuing and exclusive or whether it is temporary in nature, ceasing to exist as soon as the emergency upon which it is based is extinguished.

## B. Emergency Jurisdiction

The Family Court justice in this case relied heavily on a New Jersey case, *Benda v. Benda*, 236 N.J.Super. 365, 565 A.2d 1121 (App.Div.1989), to support his determination that emergency jurisdiction is only temporary in nature. In *Benda*, the parties to the action were married, had children, and eventually settled down in Indiana. *Id.* 565 A.2d at 1121–22. Shortly thereafter the wife sued her husband for divorce and custody in Indiana and obtained a restraining order against her husband, prohibiting him from having any contact with either her or their minor children. *See id.* 565 A.2d at 1122. Several months later the wife traveled to New Jersey and thereafter filed a Domestic Violence Complaint, alleging acts of violence by her husband in Indiana. As a result, a second temporary restraining order was issued against the husband that granted the wife temporary custody of the children. *Id.* The wife then brought an action in New Jersey Superior Court, seeking permanent custody of her children and requesting that the court assume emergency jurisdiction over the case. She also sought a stay of the similar custody proceedings pending in Indiana, where her husband had moved for the return of the children. The Indiana court denied her request for a stay, ordered the children returned to Indiana, and declared the wife in contempt of the preliminary order. *Id.*

In view of the conflicting custody orders and the simultaneous claims of jurisdiction, the New Jersey court conducted a hearing on the issue of "emergency jurisdiction." At the conclusion of the hearing, the trial justice concluded that he had jurisdiction and restrained the husband from proceeding with the custody hearing in Indiana. *Id.* The case was appealed.

The New Jersey appellate court concluded, however, that since Indiana was the original home state of all the parties, pursuant to the UCCJA it was the proper forum to adjudicate custody. *See Benda,* 565 A.2d at 1123–24. The court further held that the State of New Jersey was precluded from exercising jurisdiction over the matter unless the children were physically present in the state and an emergency existed wherein the children were in need of protection from abuse or neglect. *Id.* 565 A.2d at 1124. Nevertheless, even in those limited circumstances the court's jurisdiction was "clearly circumscribed and only allowed the judge to take interim protective measures with respect to the children, not to usurp the jurisdiction of the Indiana courts." *Id.*

> " 'Assumption of emergency jurisdiction is an assumption of temporary jurisdiction only; it is meant solely to prevent irreparable and immediate harm to children and, absent satisfaction of *other* UCCJA jurisdictional prerequisites, does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody deposition [*sic* ]. \*\*\* Emergency jurisdiction confers authority to make temporary or-

ders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the Act.'" 565 A.2d at 1124. (Emphasis added.)

We find this reasoning to be persuasive and discern no error in the trial justice's reliance thereon.

Sharon argues, however, that *Benda* is inapplicable because that case was decided under the provisions of the UCCJA, not the PKPA, and involved the exercise of emergency jurisdiction after another state had previously issued a custody order rather than exercise it to issue an initial order, as in the case presently before this Court. Although we are cognizant of these distinctions and agree that the facts of *Benda* differ slightly from those presently before us, we are of the opinion that these differences do little to detract from the sound analysis set forth by the *Benda* court concerning the nature of emergency jurisdiction.

It is significant that the language utilized by the PKPA and the UCCJA with respect to emergency jurisdiction is virtually indistinguishable. Subsection (c)(2)(C) of 28 U.S.C. § 1738A of the PKPA states that a child-custody determination made by a state court is consistent with the provisions of the act if such a court has jurisdiction under the law of that state and "the child is physically present in such State and *** has been abandoned, or *** it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse." Similarly § 46b–93(a)(3)(B) of Connecticut's UCCJA states that the court shall have jurisdiction to make a child-custody determination by initial or modification decree if "the child is physically present in this State and *** it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent." [4] In light of this nearly identical language, we conclude that the cogent principles enunciated by the *Benda* court are no less

persuasive when applied to the specific provisions of the PKPA. *See Murphy*, 915 S.W.2d at 702 (emergency powers under both the UCCJA and the PKPA are limited).

Furthermore, we are not persuaded that a different result is mandated in cases in which emergency jurisdiction is exercised to make an initial custody determination in contrast to cases in which the jurisdiction of a court is invoked to modify a pre-existing custody order of a sister state. We acknowledge that certain other courts have found provisions of the PKPA to be inapplicable to initial custody proceedings. *See Glanzner v. State, Department of Social Services, Division of Child Support Enforcement*, 835 S.W.2d 386, 389 (Mo.Ct.App.1992); *Columb*, 633 A.2d at 692. We also note, however, that these same courts have recognized "the coercive effect of the PKPA on the jurisdictional choices." *Columb*, 633 A.2d at 692. " '[F]or all practical purposes initial jurisdiction in custody cases must comply with both the PKPA and the UCCJA.' " `Id.`; see also Sheila L., 465 S.E.2d at 220 (applying the PKPA to initial custody orders is a practical necessity).

Whether it concerns an initial custody determination or the modification of a pre-existing custody order of a sister state, the reason for assuming emergency jurisdiction is the same—to address the immediate crisis at hand. Emergencies, however, by definition do not last. Once the exigency has abated and the proper protective measures have been employed, the basis upon which jurisdiction was established ceases to exist. To hold otherwise would be to thwart the intent of the PKPA and the UCCJA and to wreak havoc, "given the frequency with which allegations of abuse *** become part of child custody litigation." *Ex parte J.R.W.*, 667 So.2d 74, 81 (Ala.1994). In short, allowing emergency jurisdiction to serve as the basis for continuing jurisdiction would provide "a license for every unscrupulous would-be custodial parent in the country to take his or her children and make false allegations of

---

4. The corresponding provision in Rhode Island's codification of the UCCJA is similar and provides that jurisdiction will lie in the Family Court if the child is physically present in the state and "(ii) it is necessary in an emergency to protect the child

because he or she has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent." Section 15–14–4(a)(3).

emergency situations in states where favorable custody decisions may result." *Sheila L.*, 465 S.E.2d at 222.

■ Therefore, we conclude that even though a court may invoke emergency jurisdiction if it is exercised consistently with the laws of the state wherein that court is located, this jurisdiction continues only for as long as the emergency exists or until a court that has jurisdiction to enter or modify a permanent custody order is apprised of the situation and accepts responsibility. In so holding, we join a growing number of jurisdictions that have likewise determined emergency jurisdiction to be merely temporary jurisdiction. *See, e.g., Murphy*, 915 S.W.2d at 702 (emergency jurisdiction may be used to enter a temporary order giving a party custody only for as long as it takes to travel with a child to proper forum); *Harris v. Simmons*, 110 Md.App. 95, 676 A.2d 944, 948 (1996) (emergency jurisdiction is temporary and only preserves status quo for limited time); *Curtis v. Curtis*, 574 So.2d 24, 31 (Miss.1990) (exercise of emergency jurisdiction inappropriate after it became apparent that there was no clear and present danger to the children); *Smith–Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93, 100 (1996) (emergency jurisdiction of the PKPA and the UCCJA is by its very nature limited and confers authority to make temporary orders); *but see Webster v. Webster*, 1997 WL 752445 (Ala.Civ.App.1997) (unpublished opinion) (once jurisdiction is established in one state, that state continues to have jurisdiction under the PKPA as long as the child or one of the contestants remains in the state). We note that these decisions according temporary status to emergency jurisdiction appears to be in accord with prior pronouncements from this Court. *See Silva v. Tucker*, 500 A.2d 947, 949 (R.I.1985) ("When issuing a temporary emergency order, the court is not required to investigate the existence of other jurisdictional factors ***. This in-depth inquiry is carried out after a full hearing ***. In exercising emergency jurisdiction, a court is limited to protecting the child until a full-scope procedure can be conducted").

## C. Home State Preference

■ Having determined that the exercise of emergency jurisdiction is limited in nature and thus does not constitute a basis for continuing jurisdiction after the emergency abates and another court has assumed its own proper jurisdiction over the parties, we must now determine whether an alternate basis exists that would justify Connecticut's assertion of jurisdiction over the underlying custody dispute. We conclude that it does not.

■ The language of the PKPA has been interpreted to evince a "distinct priority to the 'home–State' jurisdiction of a child over another state that may have a 'significant connection' to the child or have 'substantial evidence' with regard to 'the child's present or future care, protection, training, and personal relationships.'" *Sheila L.* 465 S.E.2d at 219 (quoting 28 U.S.C. § 1738A(c)(2)(A) and (B)). *See also Harris*, 676 A.2d at 949–50 n. 8; *Smith–Helstrom*, 544 N.W.2d at 97; *Columb*, 633 A.2d at 691. Conversely the UCCJA contains no such priority and will grant jurisdiction if "it is in the best interest of the child that a court of this state assume jurisdiction." *See* § 46b–93(a)(2) of Conn. Gen.Stat.; *see also* § 15–14–4(2), *Houtchens v. Houtchens*, 488 A.2d 726, 730 (R.I.1985) (state to decide a child-custody dispute is not necessarily the home state but the one best positioned to make the decision based on the best interest of the child). Because of the apparent conflict, the PKPA home state preference would preempt the UCCJA best-interest analysis and should be utilized in determining which state has jurisdiction over the custody dispute. *See Harris*, 676 A.2d at 950 (use of significant connections as a basis for jurisdiction is forbidden when child has a home state); *Columb*, 633 A.2d at 691 (the PKPA gives primacy to home state or recent home state and does not authorize alternate best interest jurisdiction unless there is no home state).

In this case both parties concede and the trial justice ultimately found that Rhode Island is the children's home state for purposes of the PKPA and the UCCJA. As the Family Court justice observed, the home state provision of the PKPA takes precedence over

the substantial-connection component of the UCCJA, upon which the Connecticut Superior Court judge appears to have based his exercise of jurisdiction. Therefore, because the children's home state of Rhode Island agreed to assume jurisdiction and proceed with the child custody determination, Connecticut could not base its exercise of jurisdiction on the children's significant connections with that state.

## III

### The Conclusion

Accordingly we concur with the Family Court justice and conclude that even though it was appropriate pursuant to either the UCCJA or the PKPA for the Connecticut Superior Court to exercise emergency jurisdiction in response to Sharon's allegations of abuse, this jurisdiction continued only for as long as it took to secure the safety and well-being of Sharon and the children. Once the emergency ceased to exist, Connecticut lost its jurisdiction, and the children's home state, Rhode Island, was entitled to exercise its jurisdiction, to conduct a full hearing, and issue permanent orders with respect to visitation and custody.

For the foregoing reasons, the petition for certiorari is denied, and the writ heretofore issued is quashed. The decree of the Family Court is affirmed. The papers in the case may be remanded to the Family Court with our decision endorsed thereon.

BOURCIER, J., did not participate.