**Barbara OGDEN as next friend of Brittany Chace Rath–Roth**

v.

**Sharolyn Lee RATH et al.**

**Nos. 99–149–Appeal.**

Supreme Court of Rhode Island.

July 10, 2000.

---

Gregory A. Carrara, Providence, Cherrie R. Perkins, Cynthia M. Gifford, for plaintiff.

Arthur M. Read, III, North Scituate, for defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

On December 22, 1994, a justice of the Rhode Island Family Court awarded temporary custody of Brittany Chase Rath–Roth (Brittany) to Barbara Ogden, the child's grandmother and the petitioner in this matter. No appeal was taken from that order. Subsequently, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), the child's biological father, Alan Jay Roth, challenged the Family Court's jurisdiction to award custody. He additionally sought custody of the child. His motion to vacate the temporary custody order was denied, and he now appeals that issue following entry of an order, pursuant to Rule 54(b) of the Family Court Rules of Procedure for Domestic Relations.

The case came before a single justice of this Court, who directed the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by the parties and hearing the arguments of counsel, we are of the opinion that no such cause has been shown, and we proceed to resolve the appeal at this time.

On December 15, 1989, Brittany was born in Colorado to Sharolyn Lee Rath (the mother) and Alan Jay Roth (the father).[1] After establishing his paternity, the father sought and was given temporary visitation rights with the child in Colorado. The record discloses that, although she had a severe drug and alcohol abuse problem, the mother was granted temporary custody of Brittany. In August 1993, when it was learned that the mother might be planning to leave Colorado, the Colorado Juvenile Court entered an order requiring her to give the father adequate notice before removing Brittany from the state for more than six weeks.

On March 12, 1994, the mother brought Brittany to Rhode Island. Not long thereafter, she abandoned Brittany, leaving her in the care of the child's maternal grandmother and the petitioner in this case, Barbara Ogden (the grandmother). On September 16, 1994, the Colorado Juvenile Court became aware that Brittany was in Rhode Island and that the mother had failed to give the father adequate notice as required by the earlier Colorado court order. After a hearing, the Colorado Juvenile Court found that the father had:

1. Brittany's parents never have been married     to each other.

"diminished capacity to care for Brittany; he's not ready to be a full time father to her. He lives in a motel and has neither an employment record nor a stable history of child support payments. *If Brittany returns to Colorado,* the Court will want to have a parent/child interactional done between the child and her father." (Emphasis added.)

The Colorado Juvenile Court granted temporary legal custody of Brittany to Janice Grimm (Ms. Grimm) in Colorado and appointed Jan Tazelaar (Ms. Tazelaar), a Colorado attorney, as guardian ad litem. It then granted the father weekly telephone contact with Brittany at the grandmother's home in Rhode Island, and directed him "not to say anything bad about the grandparents or [the mother] to the child, nor to discuss the current custody situation with the child." The Colorado Juvenile Court also issued a bench warrant for the mother's arrest. Meanwhile, Brittany was left without the benefit of a legal custodian in Rhode Island.

On October 13, 1994, the grandmother filed an *ex parte* motion and a miscellaneous petition in the Rhode Island Family Court, seeking temporary custody of Brittany in Rhode Island. The miscellaneous petition named the mother and Ms. Grimm as respondents. Although the father was not named as a party, he was served with a summons and copy of the *ex parte* order, returnable December 14, 1994. However, he failed to respond to the summons by answer, special or general appearance, or to attend the hearing on December 14, 1994.

In support of her miscellaneous petition, the grandmother acknowledged that the Colorado Juvenile Court had granted temporary legal custody of Brittany to Ms. Grimm, had appointed Ms. Tazelaar as guardian ad litem and had granted telephonic visitation rights to the father. In her Family Court petition, the grandmother alleged that the mother had abused and neglected Brittany, and that the child did not have a legal guardian in Rhode Island

because the mother no longer had legal custody of her. Meanwhile, on October 27, 1994, the Colorado Juvenile Court rescinded Ms. Grimm's legal custody of Brittany, stating that "it was the court's intent that it should occur only when the child was in this court's jurisdiction ." The court declined "to consider remaining issues in view of pending judicial review."

On December 22, 1994, the Rhode Island Family Court awarded temporary legal custody to the grandmother "until such further times [*sic*] as this court shall determine that re-unification with the minor child's parents can lawfully be accomplished, if at all." The court granted the mother reasonable rights of supervised visitation and granted the father the same telephone visitation rights as previously had been granted by the Colorado Juvenile Court.

On January 18, 1996, Ms. Tazelaar moved in the Colorado Juvenile Court to withdraw as guardian ad litem for Brittany because of the long period of inactivity in the case. Ms. Tazelaar informed Brittany, through the grandmother, of her intent to withdraw as legal guardian. On February 5, 1996, the Colorado Juvenile Court granted Ms. Tazelaar's motion after finding that no party would be prejudiced by her withdrawal. Thus, the grandmother was left as Brittany's sole legal guardian.

On April 2, 1998, the Colorado Juvenile Court declared that it had jurisdiction over Brittany and ordered that she be returned to the State of Colorado immediately. Subsequently, on April 29, 1998, the father filed a motion for custody and other relief in the Rhode Island Family Court. In his motion, he asserted that the Family Court had illegally granted temporary legal custody to the grandmother in violation of the UCCJA, and requested the court to vacate its order of December 22, 1994. He also sought by his motion to have Colorado declared as Brittany's home state, and for Rhode Island to give full faith and credit and accord comity to the Colorado proceedings. He additionally requested that

he be permitted to return Brittany to Colorado so that the Colorado Juvenile Court could take further appropriate action. Alternatively, in the event that the Family Court determined Rhode Island to be Brittany's home state, he sought sole custody and permanent placement of her.

Citing lack of timeliness for the motion, pursuant to Rule 60(b) of the Family Court Rules of Procedure for Domestic Relations, on October 19, 1998, a trial justice of the Rhode Island Family Court denied the father's motion to vacate. He additionally found that Rhode Island was Brittany's home state at the time of the December 22, 1994, order, because Brittany had been in Rhode Island for more than six months and Rhode Island had been in the best position to determine the best interests of the child. The father's subsequent motion to reconsider that decision was denied. In order to file an immediate appeal from the order denying his motion to vacate the December 22, 1994, order, the father sought and was granted an entry of final judgment pursuant to Rule 54(b) of the Family Court Rules of Procedure for Domestic Relations. His appeal is now before us.

The father raises six issues on appeal, but we discern no need to address each of them individually. Essentially he contends that the trial justice erred in not vacating the December 22, 1994, order because Colorado was the home state and was entitled to full faith and credit and comity. He maintains that the temporary custody award of December 22, 1994, never was final; consequently, he asserts, the trial justice erred in denying his motion to vacate by applying, *sua sponte*, Rule 60(b).

■ General Laws 1956 § 15–14–4(a)(3)(i) of the Rhode Island permits the Family Court to assume emergency jurisdiction in cases in which a child is physically present in Rhode Island and has been abandoned. "Emergency jurisdiction confers authority to make temporary orders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the Act." *Nadeau v. Nadeau*, 716 A.2d 717, 723–24 (R.I.1998) (quoting *Benda v. Benda*, 236 N.J.Super. 365, 565 A.2d 1121, 1124 (1989)). "Emergencies, however, by definition do not last. Once the exigency has abated and the proper protective measures have been employed, the basis upon which jurisdiction was established ceases to exist." *Nadeau*, 716 A.2d at 724. Thus, emergency jurisdiction is merely temporary jurisdiction. *Id.* at 725.

■ In the present case, it is clear that Brittany had resided without a legal guardian in Rhode Island for at least six months before the grandmother's miscellaneous petition for temporary custody. It is equally clear that an emergency existed at the time the miscellaneous petition was filed. The mother abandoned Brittany at the grandmother's home and disappeared without a trace. Not having any legal rights to care for and protect the child, the grandmother was left with no option but to seek temporary legal custody pursuant to the UCCJA. The Family Court properly exercised its emergency jurisdiction over the matter and, after reviewing the best interests of the child, granted the grandmother's miscellaneous petition. We cannot say that the Family Court trial justice erred when he entered the order on December 22, 1994.

■ However, because the Family Court could exercise emergency jurisdiction to issue the *temporary* custody order, we conclude that the trial justice erred when, acting pursuant to Rule 60(b), he denied the father's motion to vacate. Rule 60(b) applies only to relief from "a final judgment, order, or proceeding" and not to an interlocutory matter such as this. Nevertheless, this Court previously has exercised its prerogative to affirm a determination of a trial justice "on grounds different from those enunciated in his or her decision." *State v. Pena Lora*, 746 A.2d 113, 118 (R.I.2000). *See also Doe v. Gelineau*, 732 A.2d 43, 45 (R.I.1999) (upholding grant

of summary judgment on different grounds); *Ahlburn v. Clark*, 728 A.2d 449, 450 (R.I.1999) (same).

■ Since the order of December 22, 1994, was entered, the mother still remains missing; consequently, the grandmother has retained temporary custody of the child. Although the Colorado Juvenile Court has issued various orders demanding the return of Brittany to that state, at no time were any provisions for her care and transportation made to facilitate such orders. Thus, it is not clear that the Rhode Island Family Court's emergency jurisdiction ever has abated. Moreover, even if the emergency situation had abated, the father, by filing his concurrent motion for legal custody of Brittany here in Rhode Island, has conferred personal jurisdiction in the Family Court over his petition seeking legal custody. *See Houtchens v. Houtchens*, 488 A.2d 726, 728 (R.I.1985) (filing a motion for temporary support and custody conferred personal jurisdiction on the Family Court in spite of the concurrent filing of a motion to dismiss on jurisdictional grounds pursuant to the UCCJA).

Consequently, we affirm the trial justice's denial of the father's motion to vacate, but for reasons other than as relied upon by the trial justice, and we remand the case to the Family Court, where that court shall proceed to conduct an expedited trial on the merits on the outstanding custody matter.[2] Recognizing, as we must, this state's preference for keeping children with their parents (*see Carr v. Prader*, 725 A.2d 291, 294 (R.I.1999)), and to assist the Family Court in determining the best interests of the child, we direct the trial justice to communicate with the judge presiding over the case in the Colorado Juvenile Court to request his or her input on the custody issue.

For the foregoing reasons, the father's appeal is sustained concerning the Rule

60(b) issue; however, because the Family Court properly exercised its emergency jurisdiction over Brittany under the UCCJA and because that emergency has yet to abate, his appeal is denied. The order appealed from is affirmed. The papers are remanded to that court for a determination of the father's motion for custody in accordance with this decision.

---

2. We note at this juncture that by requesting a final judgment pursuant to Rule 54(b) of the Family Court Rules of Procedure for Domes- tic Relations and appealing therefrom, the father further delayed final resolution of the legal custody issue.