734 A.2d 342

M.P.H.M., PLAINTIFF–RESPONDENT, v.
K.S.M., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 8, 1999—Decided July 6, 1999.

52

Before Judges MUIR, Jr., EICHEN and COBURN.

*Lynn Fontaine Newsome*, argued the cause for appellant (*Donahue, Braun, Hagan, Klein & Newsome*, attorneys; *Francis W. Donahue* and *Ms. Newsome*, of counsel; *Debra S. Weisberg*, on the brief).

*Amy Wechsler,* argued the cause for respondent (*Copeland, Shimalla & Wechsler,* attorneys; *Ms. Wechsler,* of counsel and on the brief).

The opinion of the court was delivered by

MUIR, Jr., P.J.A.D.

On this appeal, which implicates the Uniform Child Custody Jurisdiction Act (UCCJA), *N.J.S.A.* 2A:34–28 to –52, defendant, a New Jersey resident, seeks reversal of a September 16, 1998, order in favor of plaintiff, a Pennsylvania resident, which relinquished jurisdiction to Pennsylvania "over all issues related to custody, visitation and the welfare of the parties' children." The order stemmed from a post-divorce judgment dispute the parties had over the care and treatment of one of their four children, 13–year–old L.M. The order had the effect of modifying a New Jersey divorce judgment. Defendant contends the trial judge (original trial judge) entered the order without giving him the opportunity to be heard and without making findings to support the order. We reverse and remand for further proceedings.

Prior to their divorce, both parties were residents of New Jersey. Their 1992 New Jersey divorce judgment, entered by the original trial judge, provided for joint legal custody of the children, with plaintiff the physical custodial parent. The judgment also gave plaintiff the right to move to Pennsylvania, but New Jersey retained jurisdiction. That year, plaintiff moved to a Philadelphia suburb with the four children.

L.M., in April 1998, experienced severe emotional and psychological problems that required her admission to a Pennsylvania hospital. The problems, to a significant degree, stemmed from the divorce and the continued acrimony between the parties. In May, the hospital, against plaintiff's wishes, released L.M. to defendant's custody. Defendant took L.M. to Morristown, New Jersey, where he enrolled her in a day treatment program. At the same time, he took her to a Morristown psychologist, who recommended placement in a residential program for treatment.

L.M. resided with her father for the entire summer of 1998. During that time, defendant registered L.M. with the Morris School District for the 1998–99 school term. Both acts contravened express provisions of the divorce judgment. With partial financial assistance available from the Morris School District, defendant decided to enroll L.M. at the Grove School in Connecticut, which apparently has a residential treatment program which suits L.M.'s needs.

On or about July 28, 1998, plaintiff filed an order to show cause seeking an order to compel L.M.'s return to her custody and an order relinquishing jurisdiction of custody to Pennsylvania. Plaintiff contemporaneously filed a complaint in Pennsylvania for it to take jurisdiction of custody issues.

A second trial judge, in the absence of the original trial judge, denied the relinquishment of jurisdiction application without prejudice but extended L.M.'s "visitation" with her father and prohibited L.M.'s removal from New Jersey. The second judge did not allow oral argument on the relinquishment of jurisdiction issue.

On September 14, 1998, plaintiff filed a second order to show cause to have L.M. returned to plaintiff's physical custody. That application led to the order under appeal. It was apparently done without giving defendant the opportunity to respond either orally or in writing. The record on appeal discloses no findings made in support of the entry of that order.

In October 1998, defendant filed a notice of appeal. Both parties simultaneously filed emergent applications. We denied defendant's emergent motion to transfer custody of L.M. to him. We also denied plaintiff's emergent motion to compel L.M.'s return to plaintiff's physical custody. However, we remanded the matter to the original trial judge "for the limited purpose of determining whether defendant should be required to deliver custody of L.M. to plaintiff."

On October 30, 1998, a telephonic oral argument was held with the original trial judge. At that time, the judge explained that

before entering the order under appeal, he had discussed the matter with a judge of the Court of Common Pleas, Montgomery County, Pennsylvania. The judges decided under the UCCJA that Pennsylvania was L.M.'s "home state" for the purposes of any further custodial considerations. *But see E.E.B. v. D.A.*, 89 *N.J.* 595, 610, 446 *A.*2d 871 (1982) (holding UCCJA does not contemplate blind obedience to home state jurisdiction). Accordingly, the original judge vacated the earlier order of August 11, 1998, and relinquished jurisdiction to Pennsylvania. The judge further exercised emergency jurisdiction under the UCCJA, *N.J.S.A.* 2A:34-31(a)(3)(ii), to "temporarily" place L.M. in the Grove School. As of the time of this appeal, she is still a resident of the Grove School.

Defendant appeals, seeking reversal of the jurisdiction relinquishment order. He contends the trial judge improperly relinquished jurisdiction to Pennsylvania because he was never afforded an opportunity to argue the issue during the second order to show cause and because the judge failed to make any findings to support the relinquishment. He also contends jurisdiction was improperly relinquished.

█ While this appeal has been pending, the Pennsylvania court entered an order on April 28, 1999, stating:

1. The Court of Common Pleas of Montgomery County, Pennsylvania shall have conditional jurisdiction over any and all custody matters involving the parties' four (4) minor children . . . ;

2. In the event that New Jersey Courts reverse the Order of the [original trial judge] and accept jurisdiction of this matter, this Court shall relinquish jurisdiction to New Jersey;

3. If the New Jersey Courts do not reverse [the original trial judge's] order and do not accept jurisdiction, nothing would preclude either party from requesting a change in jurisdiction if subsequent events justify such a change.

We do not consider this order to be an assertion of subject matter jurisdiction by the Pennsylvania court. *See Ganz v. Rust,* 299 *N.J.Super.* 324, 336, 690 *A.*2d 1113 (App.Div.1997).

## I

Set against the background of no findings by the original trial judge to support the issuance of the order under appeal, the parties requested at oral argument that we exercise original jurisdiction under *R.* 2:10–5 and resolve the relinquishment of jurisdiction issue. We decline to do so. We find the record insufficient when viewed in light of the criteria governing resolution of the issue. *See E.E.B., supra,* 89 *N.J.* at 610, 446 *A.*2d 871.

## II

The apparent genesis for the order under appeal is the original judge's communication with the Pennsylvania court judge. As a consequence of that communication, one which led to the conclusion Pennsylvania was the home state of the parties' children, particularly L.M., the original judge entered the jurisdiction relinquishment order.

In *E.E.B., supra,* 89 *N.J.* at 612, 446 *A.*2d 871, the Court recommended communication with judges of sister states when there is "doubt as to whether a sister-state has continuing jurisdiction or has declined exercise of it" under the UCCJA. Unlike the rationale behind the recommended procedure, this was not an instance of the sister-state's continuance of jurisdiction or its declination of exercise of jurisdiction. Instead, it was a communication designed to determine whether Pennsylvania would assume jurisdiction if New Jersey, which had initial jurisdiction to resolve custody, relinquished it. The relinquishment turned solely on the judges' conclusion Pennsylvania was L.M.'s home state. That home state jurisdiction conclusion, as we have noted, is not necessarily controlling under the UCCJA for a court's exercise of custody jurisdiction. *See E.E.B., supra,* 89 *N.J.* at 610, 446 *A.*2d 871. Moreover, the ensuing order of the Pennsylvania court is not, as we have noted, an unequivocal assumption of jurisdiction.

Beyond that, any decision by a New Jersey court to relinquish jurisdiction after exercise of undisputed original juris-

diction, *See N.J.S.A.* 2A:34–31, must be based on findings supported by credible evidence. Like any other decision, the trial judge "must find the facts and state [his] conclusions of law thereon." *R.* 1:7–4. The trial judge's obligation to make findings of fact and conclusions of law is critical in terms of both the trial, the rights of the parties, and the appellate process. *See Curtis v. Finneran,* 83 *N.J.* 563, 569–70, 417 *A.*2d 15 (1980). Here, the absence of findings by the original trial judge, one who had apparently not only shepherded the divorce trial to judgment, but also shepherded the ensuing plethora of post-judgment motions precipitated by the parties' enduring acrimony, denied this court the original trial judge's sense or feel of the case in determining which state is "the one best positioned to make the decision based on the best interest of the child." *E.E.B., supra,* 89 *N.J.* at 610, 446 *A.*2d 871. It also denied us his reasoning for determining what inconvenience, if any, is created by the continuance of New Jersey as the forum for resolution of custody of the four children. In this instance, where the New Jersey court is an inconsequential distance from the Pennsylvania residence and plaintiff continues to file post-divorce judgment motions in this state, the trial judge's input on the issue of inconvenience is significant.

Similarly, when a UCCJA jurisdictional conflict is engendered by conflicting factual allegations, as seemingly exists here, a plenary proceeding may be required. *See Bowden v. Bowden,* 182 *N.J.Super.* 307, 309, 440 *A.*2d 1160 (App.Div.1982). That again must be left to the trial judge's potential for familiarity with the verity of the fact allegations made, as that familiarity has developed through the shepherding process involved here. At the very least, notice and an opportunity to be heard is essential. *See N.J.S.A.* 2A:34–32.

In sum, we reverse the order relinquishing the jurisdiction of custody issues relative to the children of the parties. We do so in light of the lack of findings of fact and conclusions of law required to undergird the propriety of the order under appeal, the apparent genuine issues of material fact as to the criteria for

evaluating a custody jurisdiction conflict under the UCCJA which may require a plenary hearing, and the apparent denial of an opportunity for defendant to be heard. The original trial judge is directed to schedule a conference at which the appropriate course for further proceedings will be established so he may rule upon the issue of relinquishment and make the required factual findings and legal conclusions.

The order under appeal is reversed. The matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.